## 61437. PAXTON v. THE STATE.

SOGNIER, Judge.

Paxton, a 15-year-old juvenile, was tried as an adult in the Superior Court of DeKalb County for the offenses of murder, rape and burglary. He was acquitted of murder and convicted of rape and burglary. On appeal he contends the trial court erred (1) by admitting his oral and written statements into evidence, as they were obtained while he was detained in violation of Code Ann. § 24A-1402 and he was not advised fully of his rights; (2) by allowing an expert witness to testify for the state; (3) by failing to charge the jury, in connection with his statements, concerning all of his constitutional rights as a juvenile; and (4) by giving an incomplete and misleading charge to the jury concerning fingerprint evidence.

As a result of their investigation of the death of Dora Butler, the police asked appellant and his mother to come to police headquarters for "elimination" fingerprints. Appellant and his mother did so voluntarily; appellant was not under arrest at the time. They returned home, but because the fingerprints were not clear, police again asked appellant and his mother to come to police headquarters for a second set of prints. Appellant was not under arrest, and he and his mother again went to the police headquarters voluntarily about 9:00 p.m., August 8, 1977. Although the police were aware of a possible "match" of appellant's fingerprints, he and his mother were not advised of this fact. Examination of the second set of appellant's fingerprints produced a positive match of fingerprints; the

investigators were advised of this and appellant was arrested immediately. He and his mother were informed that appellant was charged with murder, rape and burglary, and both were advised of appellant's Miranda rights (Miranda v. Arizona, 384 U.S. 436 (86 SC 1602, 16 LE2d 694)). They were given two identical forms entitled Advice of Rights to Juvenile, which contained the Miranda rights in simplified form, a waiver of such rights and a waiver of an attorney's presence during questioning. Appellant read and explained the form to his mother, who could not read, and both of them signed the forms. Investigators Steine and Walker then questioned appellant in his mother's presence. About 12:30 a.m. appellant made a statement implicating himself and two other boys in the alleged offenses. This statement was .reduced to writing; appellant read the written statement, and both he and his mother signed it.

Sometime between 1:00 and 2:00 a.m. Mrs. Paxton voluntarily went home, as she had to work later that morning. Prior to her departure, she was advised that she could remain and be present during any further questioning of her son. Lt. Ledbetter and Sgt. Shockley then decided to question appellant, and shortly after Mrs. Paxton's departure, went into the conference room where appellant was sitting and questioned appellant further. This room had been designated by the Juvenile Court Judge as one of two areas where juveniles could be questioned. Ledbetter and Shockley talked to appellant about 15 or 20 minutes, and he (appellant) told them that he had committed the offenses with which he was charged. Lt. Ledbetter and Sgt. Shockley left the room and Ledbetter told Steine that appellant was now ready to make another statement, or confess. Steine returned to the conference room about an hour later, and at 3:35 a.m. started taking a second written statement. No one else was present initially during the questioning; when Steine was approximately half-way through writing the statement, Sgt. Vivian Underwood of the Youth Squad entered the conference room and remained until the statement was completed at 4:27 a.m. Thereafter, appellant was taken across the street to the Juvenile Detention Center. While crossing the street, appellant kept saying "Why did I do it, I didn't mean to kill her."

Somewhere around 3:00 or 3:30 a.m. Judge Wheeler, the Juvenile Court Judge, was called by telephone and he instructed Sgt. Underwood to write "Hold for Superior Court" on the "DF&CS" sheet. He may have instructed Underwood to take appellant to the Detention Center. The only other contact with anyone outside the police headquarters was a telephone call to an assistant district attorney at approximately 9:00 p.m., August 8, 1977 after the match of appellant's fingerprints. The assistant district attorney told the

police that the Superior Court of DeKalb County would take jurisdiction over the case.

1. Appellant contends that these facts establish clearly that the police violated the provisions of Code Ann. § 24A-1402 and therefore, the confession was obtained illegally and is inadmissible.

Code Ann. § 24-1402 of the Juvenile Court Code of Georgia (Code Ann. Title 24A) provides, in pertinent part, as follows:

"(a) A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall: . . .

"(3) bring the child immediately before the juvenile court or promptly contact a juvenile court intake officer . . .; or

"(4) bring the child who is suspected of committing a delinquent act before the superior court of the county where the delinquent act occurred if the act is an act over which the superior court has concurrent jurisdiction as provided in section 24A-301 (b); . . .

"(c) The person taking a child into custody shall promptly give notice thereof, together with a statement of the reason for taking the child into custody, to a parent . . . and to the court. Any temporary detention or questioning of the child necessary to comply with this section shall conform to the procedures and conditions prescribed by this Code and rules of court."

Code Ann. § 24A-401 provides, in pertinent part:

"(a) 'Court' or 'juvenile court' means the court exercising jurisdiction over juvenile matters.

"(b) 'Judge' means judge or judges of the court exercising jurisdiction over juvenile matters . . ."

Code Ann. § 24A-2002 (b) provides, in pertinent part: "A child charged with a delinquent act need not be a witness against or otherwise incriminate himself. An extrajudicial statement, if obtained in the course of violation of this Code [Title 24A] or which would be constitutionally inadmissible in a criminal proceeding, shall not be used against him . . ."

It was not disputed by anyone that appellant was a juvenile and that the police investigating the case knew he was only 15 years of age. Thus, we are faced initially with the issue of whether the provisions of the Juvenile Code were violated, and if so, did such violation make appellant's confessions inadmissible pursuant to the provisions of § 24A-2002 (b).

Appellant and his mother were present at police headquarters voluntarily when appellant was arrested and charged. Both appellant and his mother were advised that he was suspected of the offenses of murder, rape and burglary, and both were advised of appellant's rights under the holding of Miranda v. Arizona, supra. Thus, none of

appellant's constitutional rights were violated. However, appellant contends that because the procedural requirement that the court exercising jurisdiction over appellant be notified immediately of his detention was not followed, his confessions are not admissible. We do not agree. Although notifying an assistant district attorney is not, in our opinion, notification to "the court" as defined in the Juvenile Code, the juvenile court judge was advised of appellant's detention at approximately 3:00 a.m. Appellant's mother was present with him when he made his first written confession, and was advised that she could remain with appellant; she chose voluntarily to depart. After her departure and prior to appellant's second written confession, the juvenile court judge was contacted. Thus, all basic requirements of Code Ann. § 24A-1402 were met. In *B.G. v. State of Ga.,* 143 Ga. App. 725, 729 (240 SE2d 133) (1977), we stated: "While the language of the statute required the doing of a certain thing, that is, taking him immediately before the juvenile court or delivering him to a detention or shelter care facility or to a medical facility (see Code Ann. § 24A-1402 (a) (2), supra), such language would generally be construed as directory and not as a limitation of authority and particularly so where no injury appears to have resulted . . ." Even assuming arguendo that the delay in contacting the juvenile court judge constituted a technical violation of the Juvenile Code, we can see no resulting injury to appellant from such delay. It is apparent that the purpose of § 24A-1402 is to make certain that a juvenile's rights are protected when he is taken into custody or placed in detention. This was done in the instant case, and his mother was present with him. In all cases we have found holding that a violation of the code rendered a confession inadmissible, different factors directly affecting the juvenile's rights were present. See, e.g., *J. J. v. State of Ga.,* 135 Ga. App. 660 (218 SE2d 668) (1975), parents not present or notified of detention; juvenile unaware of right to have parents present; *Jackson v. State,* 146 Ga. App. 375 (246 SE2d 407) (1978), juvenile's parents not notified or present; *Riley v. State,* 237 Ga. 124 (226 SE2d 922) (1976), parents not present; *Crawford v. State,* 240 Ga. 321 (240 SE2d 824) (1977), juvenile not taken before court, not advised of right to have parent, relative or other adult present. In the instant case, none of these factors were present, and considering the totality of the circumstances we find the violation, if any, of the Juvenile Code was harmless. *B.G. v. State of Ga.,* supra. Accordingly, the trial court did not err in admitting appellant's confessions, both oral and written, in evidence.

2. An expert witness was allowed to testify that a pubic hair taken from the sheet on the victim's bed, and a pubic hair found on her stocking, were compared microscopically with known pubic hair

samples taken from appellant. The expert found 15 matching characteristics in appellant's hair samples and those found on the victim's sheet and stocking. He further testified that only one out of one hundred black males in the general population would have pubic hair with the same characteristics as appellant's pubic hair; the expert concluded that the hairs examined could have a common origin. Appellant contends it was error to allow such testimony, as it was based on "speculative probabilities." The specific issue as it relates to a comparison of hair samples has not been decided previously in Georgia. However, in *Douglas v. Herringdine,* 117 Ga. App. 72, 76 (3) (159 SE2d 711) (1967), we held that testimony of a physician who treated a witness that "it was possible that as a result of the sedation she *could have been* less alert . . ." (emphasis supplied) was not inadmissible as being pure speculation or an unwarranted conclusion. See also *Georgia Southern &c. R. Co. v. Haygood,* 103 Ga. App. 381, 382 (2) (119 SE2d 277) (1961).

Code Ann. § 38-1710 provides, in pertinent part: "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible . . ." It was not disputed that the witness in the instant case was an expert in the field of microanalysis; therefore, his opinion that the hairs found at the scene of the crime and the pubic hair of appellant could have a common origin is admissible under the provisions of § 38-1710. *Jenkins v. State,* 156 Ga. App. 387, 388 (2) (274 SE2d 618) (1980). In *Jenkins,* we stated: "The [expert] witness explained the procedure, thereby giving the facts on which his opinion was based. The question, then, is not of admissibility but of the weight to be given the evidence by the jury." Hence, the trial court did not err by allowing the expert to testify.

3. Appellant contends the trial court erred in its charge to the jury on the voluntariness of appellant's confession because the court did not charge the jury that as a juvenile, he had the absolute right to have a parent, guardian or another adult present with him during any and all questioning.

In *Riley v. State,* supra at 128, the Supreme Court established a "totality of circumstances" test in determining if a waiver of constitutional rights by a juvenile was made knowingly and voluntarily. The court enumerated nine factors to be considered, including " '(3) knowledge of the accused as to both the substance of the charge . . . and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney . . .' " In the instant case, it is not disputed that appellant and his mother were both advised of the charges against appellant, and of his Miranda rights, which include the appellant's right to counsel. Further, he was

not held "incommunicado," and his mother was present with him from the time appellant was picked up at home (about 8:30 p.m.) until she departed voluntarily about 1:30 a.m.; prior to her departure, she was advised that she had a right to remain with appellant during any further interrogation.

We find no case requiring an accused juvenile to be advised that he has a right to have a parent, guardian or adult present during questioning. The requirement of our Juvenile Code (§ 24A-1402 (c)) is that when a child is taken into custody, notice will be given *to a parent* of the reason therefor. In the instant case appellant's mother was with him and was advised of the charges against him; both appellant and his mother were advised of his right to remain silent, and to have an attorney present. Both appellant and his mother understood these rights and waived them. In re Gault, 387 U.S. 1 (87 SC 1428, 18 LE2d 527 (1967)), relied upon by appellant, makes no mention of a right to have a parent, guardian or other person present during any and all questioning. Rather, Gault holds that a confession may not be obtained prior to *notifying* the child and his parents of the right to have *legal counsel* and to refuse to answer questions; this requirement was met in the instant case, as were the requirements of *Riley,* supra, that a juvenile be allowed to *consult* with relatives. Thus, the requirements set forth in Gault, supra, *Riley,* supra, and our own Juvenile Code in this regard were met. Since there is no requirement, or right, to have a parent present during any or all questioning, it follows that the charge of the court was not incomplete in the particulars alleged by appellant.

Appellant also contends the trial court erred by failing to charge the jury that pursuant to letters from two successive juvenile court judges, police could not question a juvenile in designated areas of the police headquarters unless a youth squad officer was present while a juvenile was being detained at police headquarters. Although appellant contends the court's charge was incomplete as to this "right" of a juvenile, he cites no authority to support his contention, and we find none. Even assuming, for the sake of argument only, that the presence of a youth squad officer is a right of appellant, the police complied with this requirement. The letters require the presence of a youth squad officer while the child is being detained, and testimony concerning the letters was presented before the jury. Thus, the jury was aware of the requirements imposed by the juvenile court judges and needed no special instructions on the matter. Lastly, the jury heard testimony that a youth squad officer was, in fact, present at police headquarters during the entire time of appellant's detention, as required by the letters. Thus, there was no need for a charge to the jury on this matter.

4. Lastly, appellant contends the trial court erred by giving an incomplete and misleading charge to the jury concerning fingerprint evidence. The court's charge was as follows: "I further charge you, Ladies and Gentlemen of the Jury, that evidence of correspondence of fingerprint impressions for the purpose of identification when introduced by qualified fingerprint experts is admissible in criminal cases, the weight and the value of such testimony being a question for you, the jury, to warrant a conviction. However, the fingerprints have been found in the place where the crime was committed." Appellant requested that the court add the following statement to the charge: "however, the fingerprints corresponding to those of the accused must have been found . . . under such circumstances that they could only have been impressed when the crime was committed." Appellant contends that the court's denial of his request was error, because without the qualifying statement requested, the court's charge constituted a comment on the evidence, and was an incomplete and misleading statement of the law. We disagree.

Appellant relies on *Miller v. State,* 122 Ga. App. 553, 554 (177 SE2d 838) (1970), *Anthony v. State,* 85 Ga. App. 119, 121 (68 SE2d 150) (1951) and *Brown v. State,* 133 Ga. App. 56, 57 (4) (209 SE2d 721) (1974), but such reliance is misplaced. The cases cited relate to sufficiency of circumstantial evidence to warrant a conviction on fingerprint testimony *alone,* or where it is the sole evidence in the case. The cases do not deal with the correctness of a charge to the jury, and even though such a charge might be appropriate where the sole evidence of a crime is fingerprint evidence and testimony, it would not be appropriate in the instant case. In addition to fingerprint evidence, there was evidence of matching pubic hair found at the scene, two written confessions and appellant's statement while being taken to the juvenile detention center that "I didn't mean to kill her." The time appellant's fingerprints were left at the scene was not in issue, for he confessed being in the victim's home, which he burglarized; he also confessed to raping the victim. Where a requested instruction deals with a matter not in issue, it is not error for the trial court to deny such a request. *Weatherspoon v. K-Mart Enterprises,* 149 Ga. App. 424, 427 (2) (254 SE2d 418) (1979).

*Judgment affirmed. Shulman, P. J., and Birdsong, J., concur.*

Decided June 23, 1981 —<br>Rehearing denied July 7, 1981 —

*Harold A. Horne, Jr., Clifton O. Bailey,* for appellant.
*Robert E. Wilson, District Attorney, Susan Brooks, Ann Poe*

*Mitchell, Assistant District Attorneys,* for appellees.