McMurray, Presiding Judge.
The appellant, a 14-year-old juvenile, was adjudicated a delinquent child. The petition alleged that the appellant was delinquent in that he committed acts constituting the offenses of “burglary,” “armed robbery,” and “aggravated assault.” On appeal, he contends the juvenile court erred by admitting evidence of other criminal acts and an extrajudicial statement which he made while in police custody. Held:
1. “Generally, evidence of other criminal acts by a defendant is inadmissible because it tends to place the defendant’s character in issue. Walraven v. State, 250 Ga. 401 (4) (6) (297 SE2d 278) (1982); State v. Johnson, 246 Ga. 654 (1) (272 SE2d 321) (1980); OCGA § 24-9-20 (Code Ann. §§ 38-415, 38-416). However, exceptions to this rule have arisen, and evidence of independent crimes is admissible for limited purposes if two conditions are met: ‘ “First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. [Cits.]” ’ State v. Johnson, supra, p. 655. If these conditions are satisfied, evidence concerning the independent crimes may be admitted for the purposes of showing, among other things, identity, motive, plan, scheme, bent of mind, intent, and course of conduct. Walraven v. State, supra, p. 408; State v. Johnson, supra, p. 655; Hamilton v. State, 239 Ga. 72, 73 (235 SE2d 515) (1977).” Kilgore v. State, 251 Ga. 291, 296 (305 SE2d 82).
The evidence demonstrated that between the hours of 11:30 p.m. on the night of February 12, 1984, and 3:00 a.m. the following morning, a black male forcibly entered a condominium in Northwest Atlanta. After gaining entry to the condominium, the intruder slashed two sleeping women in the neck with a large kitchen knife. The women had fallen asleep in the living room when they were awakened by the slashings. In the midst of the ensuing commotion, the women ran into the master bedroom and bolted the bedroom door. The women then entered an adjoining bathroom. They locked the bathroom door and braced themselves against it. In the meantime, the intruder kicked the bedroom door down. He then tried to slash his way through the bathroom door with the knife. The women spoke with their assailant through the bathroom door. In the course of the verbal exchange, the intruder told the women that his name was Gerard (the appellant’s middle name). The women asked the intruder what he wanted from them. His reply showed that his attack was sexually motivated. The women continued to speak with the intruder in an attempt to calm him down. After several hours, the women were *529 able to convince their assailant to leave the condominium. They told him to write down their telephone number and call them so they would know when he was gone. After satisfying themselves that the intruder actually left the premises, the women unlocked the bathroom door and ran to the home of a neighbor. They were then taken to a hospital where they were treated for multiple knife wounds.
A subsequent investigation of the premises revealed that the intruder left a footprint on the bedroom door. Examination of the footprint disclosed that the intruder wore tennis shoes and that he kicked the door in an unusual fashion, heel up, toe down. The investigation also revealed that the intruder wrote the victims’ telephone number on a wall and that, amongst other items, the intruder took two bras from the condominium.
Over objection, a female witness testified that at about 7:00 p.m. on February 12, only a few hours before the incident in question, the appellant knocked on her front door and, after she refused to open the front door, he “mule-kicked” the back door. That is, he “had backed up to it and kicked it.” The witness then looked out her rear window and saw the appellant “vigorously masturbating.” A tennis shoe footprint was left on the witness’ back door. By examining the footprint, the police concluded that the witness’ back door had been kicked in the same heel up, toe down fashion and at almost the same angle as the bedroom door in the burglarized condominium.
In his first enumeration of error, appellant asserts the trial court erred in admitting evidence of the other crime because it was not similar to the crimes which appellant allegedly committed. Although the acts alleged in the delinquency petition (burglary, armed robbery, and aggravated assault) were not overtly sexual, it is clear that the acts had “sexual overtones.” Jessen v. State, 234 Ga. 791, 792 (3) (218 SE2d 52). Moreover, the other crime was committed in the same vicinity and within a few hours of the criminal acts in question. Thus, the evidence of the other criminal act, indecent exposure, was admissible to show the appellant’s identity, motive and bent of mind at the time of the commission of the criminal acts set forth in the petition. Johnson v. State, 242 Ga. 649, 652 (3) (250 SE2d 394); Saleem v. State, 169 Ga. App. 952, 953 (1) (315 SE2d 487); Garmon v. State, 167 Ga. App. 781, 783 (5) (307 SE2d 298). Appellant’s first enumeration of error is without merit.
2. In his second enumeration of error, appellant contends the trial court erred because it failed to exclude an incriminating statement made by appellant to the police. In this regard, appellant argues the statement was taken in violation of OCGA §§ 15-11-19 and 15-11-31 (b).
In his statement, the appellant admitted that he had been in the condominium on the morning in question. He said that a friend got *530 him at a convenience store and said he wanted to show the appellant something. The appellant stated that he saw blood in the condominium; that his friend showed him a knife and fork which was used to stab the women; and that his friend told him the women were in the bedroom. The appellant also stated that he chased his friend around the condominium with the knife; and that he wrote the telephone number of the women on the wall because his friend asked him to. Finally, the appellant said that his friend gave him two bras from the condominium and that his father subsequently found the bras in his possession.
In pertinent part, OCGA § 15-11-19 provides: “A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall: (1) Forthwith release without bond the child to his parents, guardian or other custodian upon their promise to bring the child before the court when requested by the court . . . (3) Bring the child immediately before the juvenile court or promptly contact a juvenile court intake officer. The intake officer shall determine if the child should be released or detained. Prior to an informal detention hearing, the child shall be placed in detention, if necessary, only in such places as are authorized by Code Section 15-11-20 . . . .”
OCGA § 15-11-31 (b) reads, in part: “A child charged with a delinquent act need not be a witness against or otherwise incriminate himself. An extrajudicial statement obtained in the course of violation of this chapter or one which would be constitutionally inadmissible in a criminal proceeding shall not be used against such child. . . .”
The officer who investigated the crimes contacted the appellant’s father. They discussed the possibility of the appellant’s connection to the crime and the father told the officer he found two bras in his son’s possession. Thereafter, at about 11:00 or 11:30 p.m. on the night of March 7, 1984, the father brought the appellant to the police station. The investigating officer considered the appellant to be under arrest at that time. He read a document entitled “Waiver of Counsel by Defendant in Custody” to the father. The document contained the Miranda rights and a waiver of such rights. The officer next read and explained the document to the appellant. The document was signed by the appellant and signed by his father as a witness. Thereafter, beginning at approximately midnight, the officer began questioning the appellant. Sometimes during the questioning, the appellant and his father were in the room together; at other times, the appellant was separated from his father by a wall with an open door. The officer continuously apprised the father concerning the course which the investigation was taking. After awhile, the appellant informed the officer that he was willing to make a statement. The statement was in the form of written answers to questions propounded by the officer. About halfway through the statement, the appellant’s father ex *531 pressed his desire to leave the police station because he had to go to work later in the morning. The appellant said he did not care if his father left. The officer told the father that it would be better if he stayed with his son but that he was free to go if he wanted to. The father left of his own volition. The appellant completed the statement and signed it in the presence of the investigating officer. Thereupon, the investigating officer transported the appellant to the juvenile court. The appellant arrived there at 2:13 a.m. on the morning of March 8, 1984.
This case is not unlike Paxton v. State, 159 Ga. App. 175 (282 SE2d 912), cert. den. 248 Ga. 231 (282 SE2d 235), wherein we held: “ ‘While the language of the statute required the doing of a certain thing, that is, taking him immediately before the juvenile court or delivering him to a detention or shelter care facility or to a medical facility, (see Code Ann. § 24A-1402 (a) (2) [OCGA § 15-11-19], supra), such language would generally be construed as directory and not as a limitation of authority and particularly so where no injury appears to have resulted . . . ’ Even assuming arguendo that the delay in contacting the juvenile court . . . constituted a technical violation of the Juvenile Code, we can see no resulting injury to appellant from such delay. It is apparent that the purpose of [OCGA § 15-11-19] is to make certain that a juvenile’s rights are protected when he is taken into custody or placed in detention. This was done in the instant case, and his [father] was present with him. In all cases we have found holding that a violation of the code rendered a confession inadmissible, different factors directly affecting the juvenile’s rights were present. See, e.g., J. J. v. State of Ga., 135 Ga. App. 660 (218 SE2d 668) (1975), parents not present or notified of detention; juvenile unaware of right to have parents present; Jackson v. State, 146 Ga. App. 375 (246 SE2d 407) (1978), juvenile’s parents not notified or present; Riley v. State, 237 Ga. 124 (226 SE2d 922) (1976), parents not present; Crawford v. State, 240 Ga. 321 (240 SE2d 824) (1977), juvenile not taken before court, not advised of right to have parent, relative or other adult present. In the instant case, none of these factors were present, and considering the totality of the circumstances we find the violation, if any, of the Juvenile Code was harmless. B. G. v. State of Ga., supra.” Paxton v. State, 159 Ga. App. 175, 178 (1), supra.
“The standard for determining whether or not a confession (or admission) was voluntary is the preponderance of the evidence standard. See Brooks v. State, 244 Ga. 574, 581 (2) (261 SE2d 379). Here the juvenile court judge, as the trier of fact, must use the preponderance of evidence standard and be satisfied that .the confession was voluntary. See High v. State, 233 Ga. 153, 154 (210 SE2d 673). The decision of the trial court on this point will not be disturbed on appeal unless there is obvious error. [Cits.]” In re V. T., 168 Ga. App. *532 472, 474 (2) (309 SE2d 629). The trial judge’s determination that the appellant was capable of making a knowing and intelligent waiver of his rights is amply supported by the evidence. See Marshall v. State, 248 Ga. 227, 228 (3) (282 SE2d 301); C. R. T. v. State of Ga., 148 Ga. App. 628 (252 SE2d 58). Accordingly, the juvenile court did not err in failing to exclude appellant’s incriminating statement. Appellant’s second enumeration of error is without merit.
Decided February 25, 1985.
John W. Greer III, for appellant.
Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert III, Gerald Robinson, Assistant District Attorneys, for appellee.

Judgment affirmed.

Sognier, J., concurs. Deen, P. J., concurs in the judgment only.