## 71549. BARNES v. THE STATE.
(342 SE2d 388)

BENHAM, Judge.

Appellant, a 15-year-old juvenile offender, was tried as an adult in superior court and convicted of two counts of armed robbery. On appeal, he contends that the trial court erred in admitting into evidence his tape-recorded confession given in the sheriff's office, and that the State failed to present sufficient evidence to negate his affirmative defense of coercion.

1. The first victim testified that she surrendered her purse to a gunman she identified as appellant after he had thrust the weapon into her stomach and ordered her to do so. The second victim, a clerk in a convenience store, identified appellant as the young man who held a gun to a customer and ordered the clerk to empty the cash registers. Appellant testified and admitted the acts but claimed his conduct was coerced by his co-indictee. The co-indictee testified under a grant of immunity and denied coercing appellant into committing the armed robberies.

OCGA § 16-3-26 provides that "[a] person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." "Fear of injury must be reasonable and it must be of present and immediate violence. Coercion is no defense if the person has any reasonable way, other than

committing the crime, to escape the threat of harm. [Cit.] Such questions are for the jury. [Cits.]" *Hill v. State*, 135 Ga. App. 766, 767 (219 SE2d 18) (1975).

The burden of proof rests entirely upon the State even when a defendant asserts an affirmative defense as set out in OCGA § 16-3-20 et seq. *State v. Moore*, 237 Ga. 269 (1) (227 SE2d 241) (1976). Under a grant of immunity, the State produced appellant's co-indictee as a witness at appellant's trial. Although her credibility was questionable, the co-indictee testified that she drove appellant to the sites of the two crimes but did not force him to commit either armed robbery. Most importantly, through the testimony of the appellant himself, it was apparent that he was not subject to "imminent death" or "great bodily injury" at the time of commission of the two armed robberies. Appellant had ample opportunity to separate himself from his co-indictee during the course of the evening. We find that the jury would have been justified in rejecting appellant's defense of coercion and concluding beyond a reasonable doubt that appellant had reasonable means, other than commission of the two armed robberies, to prevent imminent death or great bodily injury to himself. *Hill v. State*, supra; *State v. Moore*, supra.

2. Appellant claims the trial court erroneously admitted into evidence an inculpatory tape-recorded statement he made to law enforcement officers. Appellant maintains that the statement should not have been admitted because it was taken in violation of OCGA § 15-11-19 (a) (3). Following a *Jackson v. Denno* hearing, the trial court held that appellant had made a voluntary statement after being properly advised of his constitutional rights, and that any technical violation of OCGA § 15-11-19 (a) (3) had not rendered the statement inadmissible. "The standard for determining whether or not a confession (or admission) was voluntary is the preponderance of the evidence standard. [Cit.] . . . The decision of the trial court on this point will not be disturbed on appeal unless there is obvious error. [Cit.]" *In re V. T.*, 168 Ga. App. 472 (2) (309 SE2d 629) (1983).

The investigating officer testified she received a phone call from appellant's uncle, who had heard of his nephew's possible involvement in an armed robbery. The uncle volunteered to bring appellant in to talk to the deputy. At 8:20 p.m., appellant arrived at the sheriff's office accompanied by his aunt and uncle, who were also his legal guardians. Appellant was advised of his *Miranda* rights in the presence of his aunt; both his signature and that of his aunt appear on the *Miranda* form acknowledging that they understood its contents. Appellant agreed to talk and was told that he was a suspect in the two armed robberies. He denied any involvement but consented to being placed in a lineup where he was positively identified by five witnesses. Appellant continued to deny any knowledge of the crimes. The inves-

tigating officer than advised appellant that he was going to be charged with the offenses. Appellant was put into the custody of the jailer, and the interrogation of appellant ceased when his guardians left the sheriff's office. Thereafter, the investigating officer received telephonic consent from appellant's aunt/guardian to question appellant outside his aunt's presence. At 10:18 p.m., appellant was interrogated a second time and that conversation, in which he admitted committing both armed robberies, was tape recorded. He further stated that it was his co-indictee's idea to commit the crimes and that she threatened to tell his juvenile probation officer that he was in possession of marijuana if he did not help her. It was at the conclusion of this interview, approximately two hours after appellant had been brought to the sheriff's office, that the juvenile intake officer was contacted.

OCGA § 15-11-19 (a) (3) provides: "A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall . . . [b]ring the child immediately before the juvenile court or promptly contact a juvenile court intake officer. The intake officer shall determine if the child should be released or detained . . ." It is undisputed that the investigating officer knew appellant was a juvenile and that the juvenile authorities were not contacted concerning his detention until the conclusion of the two-hour investigation at the sheriff's office. As a result, appellant contends that the provisions of OCGA § 15-11-19 were violated and that the resulting confession should have been ruled inadmissible by the trial court.

In a case in which the facts are closely analogous to those presently before us, this court determined that the basic requirements of the statute had been met. "While the language of the statute required the doing of a certain thing, that is, taking him immediately before the juvenile court . . . such language would generally be construed as directory and not as a limitation of authority and particularly so where no injury appears to have resulted." *Paxton v. State*, 159 Ga. App. 175, 178 (282 SE2d 912) (1981). The *Paxton* court explained that they found no resulting injury occasioned by the delay in contacting the juvenile authorities. Paxton's rights were protected and, in addition, his mother was with him.

"Even assuming arguendo that the delay in contacting the juvenile court . . . constituted a technical violation of the Juvenile Code, we can see no resulting injury to appellant from such delay." *W. G. C. v. State*, 173 Ga. App. 528 (2) (327 SE2d 522) (1985). Thus, the interrogation of appellant in the absence of a juvenile court officer, but with the knowledge and consent of his legal guardians, although a "technical violation of the Juvenile Code," did not render the tape-recorded confession inadmissible.

*Judgment affirmed. Banke, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 10, 1986.

*Kenneth J. Vanderhoff, Jr.*, for appellant.
*Rafe Banks III, District Attorney, T. Russell McClelland II, Assistant District Attorney*, for appellee.