A97A0813. IN THE INTEREST OF C. W., a child.
(490 SE2d 442)

BEASLEY, Judge.

C. W. appeals from the order of the juvenile court adjudicating him delinquent and ordering him detained for treatment. The adjudication was predicated on acts of fleeing or attempting to elude a police officer, OCGA § 40-6-395, obstruction of an officer by offering or doing violence, OCGA § 16-10-24 (b), interference with government property, OCGA § 16-7-24, and disorderly conduct, OCGA § 16-11-39.[1]

On June 25, 1996, about 7:00 p.m., a resident of a subdivision stopped Patrol Officer Eitneier and told him that two male juveniles were driving a go-cart through people's yards and on the street and that he had almost run them over. He requested the officer to ask them to stay off the street and to be careful. The officer said he would do so if he saw them.

About twenty minutes later, as Eitneier left one of the houses, he saw the go-cart come back into the subdivision from the woods at the back of the property and go into the street. He activated the siren on his patrol car to stop the go-cart to warn the youths for their safety and to prevent trespass and violation of rules of the road. But C. W., the 15-year-old driver, looked at him and drove into the woods. Eitneier activated his siren again, but C. W. did not stop.

---

[1] The State's delinquency petition also specified making a terroristic threat, OCGA § 16-11-37, as a delinquent act, but the court did not base its delinquency determination on that allegation.

Eitneier radioed for another patrol car to meet him at a nearby intersection, where he presumed C. W. would emerge. He arrived there before any other vehicle and placed his car in the road. C. W. approached, and Eitneier told him to get off the go-cart. C. W. instead evaded the car but wrecked the go-cart in doing so. As Eitneier approached, the passenger fled. C. W. was momentarily entangled in the go-cart. He extricated himself and began to run. Eitneier told him to stop, and after two or three more steps, he did so. Because C. W. had attempted to elude him on the go-cart and on foot and was larger than Eitneier, Eitneier decided to place handcuffs on him. C. W. profanely told Eitneier he could not arrest him because he was a juvenile. After being handcuffed he said he would beat Eitneier if he would remove the handcuffs and remove his badge. He also said "Don't let me catch you on the street; I'll kill you" and continued with profanities. Eitneier placed C. W. in the back of his patrol car and waited for another patrol car to arrive.

C. W. began to kick the door and window while screaming profanities. Eitneier told him to cease or he would spray him with pepper spray, but C. W. continued despite at least eight warnings. Another officer arrived, and Eitneier outlined the situation. C. W.'s kicks began to deform the door, and the other officer advised spraying him to control his combativeness. The officers opened the car and sprayed C. W., who kicked at the officers. They closed the door, and shortly C. W. kicked out the car's window.

C. W.'s mother arrived and asked for an explanation. Because they were on a busy street, blocking traffic, and people were gathering, the officers decided to go to the police station for safety rather than discuss the matter there. When they arrived, Eitneier assisted C. W. in washing his eyes, and C. W. was released to his mother.

1. C. W. first contends his motion to dismiss the delinquency petition should have been granted because certain procedures required by the juvenile code were not followed, including that C. W. was taken to the police station when he was in custody.

OCGA § 15-11-19 (a) directs "[a] person taking a child into custody, with all reasonable speed and without first taking the child elsewhere" to (1) "[f]orthwith release the child without bond to his parents . . . upon their promise to bring the child [to] court"; (2) take the child to a medical facility when applicable; (3) "[b]ring the child immediately before the juvenile court or promptly contact a juvenile court intake officer"; or (4) bring a child suspected of a delinquent act before the superior court. The State contends it complied with OCGA § 15-11-19 (a) (1) to the extent necessary. It is undisputed that the police did not take the child to a medical facility or to court.

Taking the juvenile to police headquarters did not comply with OCGA § 15-11-19 (a)'s requirement that one of the four specified

actions be taken "without first taking the child elsewhere." See *Lattimore v. State*, 265 Ga. 102, 103-104 (2) (b) (454 SE2d 474) (1995). However, a technical violation of that provision does not require dismissal if it does not produce any prejudice or injury to C. W. *In the Interest of J. D. M.*, 187 Ga. App. 285, 287 (2) (a) (369 SE2d 920) (1988). See also *Paxton v. State*, 159 Ga. App. 175, 177-178 (1) (282 SE2d 912) (1981).

C. W. argues that failure to comply with OCGA § 15-11-19 must result in dismissal of the petition, citing *Sanchez v. Walker County Dept. of Family &c. Svcs.*, 237 Ga. 406, 411 (229 SE2d 66) (1976). That case, decided under a former version of the Code, refers to the notice provision now found at OCGA § 15-11-19 (c). See *Sanchez*, supra at 407. The custody provisions of OCGA § 15-11-19 (a) were no part of the Court's opinion. *In the Interest of R. D. F.*, 266 Ga. 294, 296 (3) (466 SE2d 572) (1996), states in dicta that "failure to comply with OCGA § 15-11-26 (a), like the failure to comply with OCGA §§ 15-11-19 and 15-11-21, results in dismissal of the petition without prejudice," (footnote omitted) id., but the reference is clearly only to the notice provisions of OCGA § 15-11-19 (c). The remark was made in the context of *R. D. F.*'s discussion of a violation of OCGA § 15-11-26 (a)'s requirements on the time in which a hearing must be held. OCGA § 15-11-19 (c) triggers the time requirements of OCGA § 15-11-21 (b). See *J. D. M.*, supra at 286-288. *R. D. F.* cites *Sanchez*, and it was only OCGA § 15-11-19 (c) that was at issue in *Sanchez*. It is only a failure to comply with that notice requirement which *Sanchez* ruled mandated dismissal without prejudice.[2]

C. W. claims prejudice by the failure to comply with OCGA § 15-11-19 (a) because some of the delinquent acts would not have occurred had it been followed. Immediate release to his mother or direct transport to juvenile or superior court would not change the fact that all delinquent acts were already complete. Because injury or prejudice to C. W. has not been shown by virtue of his being taken to the police station in violation of OCGA § 15-11-19 (a), as his rights were not jeopardized, and as his mother was with him, the court did not err in failing to deny the petition on this basis. See *Barnes v. State*, 178 Ga. App. 205, 207 (2) (342 SE2d 388) (1986).

C. W. also cites OCGA § 15-11-21 (b), contending the petition was

---

[2] Our conclusion that the Supreme Court does not consider *Sanchez* to require dismissal for any violation of OCGA § 15-11-19's other provisions, particularly the custody provisions of OCGA § 15-11-19 (a), is confirmed by the fact that when the police violate OCGA § 15-11-19 (a), the Supreme Court does not rule that the petition must be dismissed but analyzes whether a statement by the juvenile was made after a knowing and intelligent waiver of his rights. See *Lattimore v. State*, supra at 103-104 (2) (b). The Court has continued this analysis post-opinion *R. D. F.* See *Barber v. State*, 267 Ga. 521, 522 (2) (481 SE2d 813) (1997).

filed more than 30 days after the incident and was therefore unlawful. " '[OCGA § 15-11-21 (b)] has no application unless a juvenile is taken into custody [see OCGA § 15-11-17], not released under [OCGA § 15-11-19 (a) (1)], but instead [is] brought before the juvenile court or delivered to a detention or shelter care facility designated by the court [OCGA § 15-11-19 (a) (2)] and then released after an investigation under [OCGA § 15-11-21 (a)].' [Cit.]" *J. D. M.*, supra at 288 (2) (b). C. W. was not brought before the juvenile court under OCGA § 15-11-19 (a) (3), nor delivered to detention and then released pursuant to OCGA § 15-11-21 (a), but rather released under OCGA § 15-11-19 (a) (1), although imperfectly. "Consequently, there was no basis for application of the 30-day time requirement of OCGA § 15-11-21 (b). The juvenile court did not err in overruling the motion to dismiss the petition." Id.

His contention that OCGA § 15-11-18.1 (b) was violated is also inapposite. The act of placing C. W. in the back of the patrol car and taking him to the police headquarters was not "[t]he imposition of interim control or detention" within the meaning of that Code section. It refers to control similar to a disposition of detention as contemplated in OCGA § 15-11-20 (a) (i.e., in a specific facility used for detention purposes), when such control is necessary during the period between accusation and hearing. The acts of which C. W. complains concern issues connected with initially taking the child into custody and are matters concerning the law of arrest. See OCGA § 15-11-17 (a) (2).

2. C. W. argues the court erred in adjudicating him delinquent for obstructing an officer by offering or doing violence. OCGA § 16-10-24 (b). The question is whether the evidence was sufficient to support the adjudication under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *In the Interest of R. A. W.*, 197 Ga. App. 225 (398 SE2d 261) (1990). The evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the court's decision. *Jackson v. Virginia*, supra; *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986).

The evidence supported the finding that C. W. obstructed Eitneier by threatening to beat Eitneier if he would remove the handcuffs and his badge and by stating he would kill Eitneier if he saw him on the street.[3] Further, after he was placed in the patrol car

---

[3] In his reply brief C. W. argues these threats show he was not offering to do violence to Eitneier *while* he was performing his duties but rather threatening violence at some point in time *after* Eitneier was through with his duties. The argument is specious. The threats were made while Eitneier was performing his police duties; when the threatened violence might be carried out is irrelevant.

and needed to be subdued from his attempts to break out of the car, he kicked at the officers.

C. W. argues Eitneier was not in lawful discharge of his duties because he had no right to take him into custody. To the contrary, Eitneier had been told by a subdivision resident that C. W. was driving his go-cart in a dangerous manner and on private yards, which his own observations in part confirmed. When Eitneier attempted to stop C. W. by signaling him with his siren so he could investigate and give a warning, C. W. unlawfully fled. OCGA § 40-6-395 (a). From that point, Eitneier was justified in apprehending C. W. and was lawfully discharging his duties when C. W. threatened him. The status of juvenile carries no privilege to threaten an officer. Nor does it shield a juvenile from reasonable police self-protection measures while conducting an investigation, such as handcuffing a belligerent suspect and confining him in the patrol car.

C. W. also contends he did not knowingly and wilfully obstruct Eitneier but rather that he believed Eitneier could not lawfully place him into custody, and that his statements to Officer Eitneier that he could not be arrested because of his juvenile status show this belief. C. W.'s belief is not the issue; it is not such a belief to which the phrase "knowingly and wilfully" refers. "The essential elements of OCGA § 16-10-24 (a) obstructing or hindering law enforcement officers are: that the act constituting obstruction or hindering was knowing and willful and that the officer was lawfully discharging his official duties. [Cit.]" *Cline v. State*, 221 Ga. App. 175 (471 SE2d 24) (1996). No reading of the evidence could accommodate a finding that C. W.'s offers to do violence to Eitneier, or his kicks, were not knowing and wilful.

3. C. W. contends the court erred by holding that he violated the law by riding his go-cart on the street. During a portion of the hearing in which C. W. questioned the police officer about what Code section he believed C. W. had violated, the court observed that driving a go-cart on a public highway is unlawful. This was not a ruling that he had committed such an act, and C. W. shows no harm resulting from the court's observation. See *Frost v. State*, 200 Ga. App. 267, 271 (4) (407 SE2d 765) (1991).

On appeal, C. W. also argues that the officer did not have an articulable suspicion to make an investigatory stop. See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). Ignoring Rule 27 (a) (1), C. W. has not supplied a statement of how he preserved his enumerations of error. His motion to dismiss the charges was predicated on the procedural issues discussed above. " 'It is well established law that enumerations of error which raise questions for the first time on appeal present nothing for decision. Grounds for reversal which may be considered on appeal are limited to those which

were argued before the trial court.' . . . [Cit.]" *McBride v. State*, 213 Ga. App. 857, 858 (3) (c) (446 SE2d 193) (1994). Furthermore, his *Terry* argument is beyond the scope of the enumeration as presented for review. See *Hasty v. State*, 210 Ga. App. 722, 725 (1) (437 SE2d 638) (1993). Even were it properly raised, Eitneier had articulable suspicion to stop C. W. See Division 2.

4. Finally, C. W. contends the court erred in ordering him detained without a separate dispositional hearing. Immediately after hearing arguments of counsel on the issue of delinquency, and adjudicating C. W. delinquent, the court directly pronounced that he would be detained in a boot camp for 180 days and be under the supervision of the Department of Children & Youth Services for a total of 24 months.

OCGA § 15-11-33 (c) provides for a bifurcated procedure in a delinquency case. When the adjudicatory stage has been completed, the court must conduct a dispositional hearing. The purpose of such, set out in the Code, was not accomplished in this case. Thus we must parrot *In the Interest of J. E. H.*, 202 Ga. App. 29, 30 (413 SE2d 227) (1991): the trial court "held only one phase of the bifurcated procedure. 'The juvenile had a right to a dispositional hearing in which he could have presented evidence relevant to the issue of disposition. We find that the juvenile code requires both an adjudicatory and dispositional hearing. Accordingly, the trial judge erred in making a disposition in the case in the absence of a dispositional hearing. The case is therefore remanded to the juvenile court for a dispositional hearing and a redetermination regarding the disposition of appellant's case.' [Cit.]"

The State contends C. W. waived the separate hearing by failing to request it but cites no authority. The Code requires the dispositional hearing. Id. Error based on the failure to hold it is neither harmless nor preserved only by objection. Its omission deprives a juvenile of the opportunity to present evidence relevant to the issue of how best to achieve the goal of " 'making the child a secure law-abiding member of society.' [Cit.]" *J. B. v. State of Ga.*, 139 Ga. App. 545, 547 (3) (228 SE2d 712) (1976). Compare *Jefferson v. State*, 205 Ga. App. 687, 688 (2) (423 SE2d 425) (1992) (the failure to provide a presentence hearing for an adult, as mandated by OCGA § 17-10-2, is neither harmless nor waived by failure to object).

*Judgment affirmed in part and reversed in part, and remanded with direction. McMurray, P. J., and Smith, J., concur.*

DECIDED JULY 15, 1997 —
RECONSIDERATION DENIED JULY 30, 1997 —

*Tony L. Axam, Eric E. Wyatt,* for appellant.
*Fredric D. Bright, District Attorney, Kenneth G. Jackson,* for appellee.
*John M. Clark,* amicus curiae.