A99A1092. CONTRACT HARVESTERS, INC. v. MEAD COATED BOARD, INC. et al.
(522 SE2d 260)

Eldridge, Judge.

Appellant, Contract Harvesters, Inc. ("Contract Harvesters"), appeals from the trial court's grant of summary judgment in favor of the appellees, Mead Coated Board, Inc. ("Mead") and Sam Rigdon.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). Summary judgment appeals are de novo reviews because summary judgment rulings are strictly matters of law and are not based at all on finding of facts, made by court or jury, nor on weighing of evidence, nor on credibility of witnesses. Summary judgment rulings are based on undisputed facts.

(Citations and punctuation omitted.) *Jenkins v. Brice*, 231 Ga. App. 843-844 (499 SE2d 734) (1998); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in the light most favorable to the appellant as the nonmoving party, the evidence shows the following: Contract Harvesters is a Georgia corporation which was engaged in the logging business. Charles Hester is the President and sole shareholder of Contract Harvesters. Contract Harvesters began to do business with the predecessor of Mead in approximately 1965 or 1966 and continued the business relationship with Mead until June 23, 1993. For several years prior to 1993, Contract Harvesters and Mead entered into an annual contract each January. Each annual contract ended on December 31 of the year in which it was signed. The annual contract did not identify any specific tracts or volume of timber to be cut. Separate contracts or addenda to the annual Timber Cutting Agreement were

entered into between Mead and Contract Harvesters during the course of each annual Timber Cutting Agreement and became part of the annual agreement. These agreements were entitled "Delivery Orders," and described the individual tract to be cut, the date by which such timber was to be harvested, and the price to be paid for the timber. The price to be paid for the timber under each delivery order was separately negotiated and took into account a number of factors, including the location of the tract and the terrain of the land on which the timber was to be cut. Under the terms of the annual contract, delivery orders which were not completed the preceding year became part of the annual contract entered into in January of the new year. This case arose out of events which occurred in 1993.

1. Contract Harvesters alleges that the trial court erred in granting appellees' motion for summary judgment, in that there is a genuine issue of fact as to the appellees' breach of the January 2, 1993, written contract with Contract Harvesters.

Both parties agree that they entered into an annual timber cutting agreement on January 2, 1993, which was effective through December 31, 1993. The 1993 annual contract set forth the general terms governing Contract Harvesters' timber harvesting work on behalf of Mead. The parties further agree that there were nine delivery orders which were entered into between the parties that became addenda to and part of the 1993 annual contract. Each delivery order contained a description of a tract of timber to be cut, the price Contract Harvesters would be paid for the timber, and the dates for performance. The 1993 annual contract and the nine addenda thereto were signed by Sam T. Rigdon, who was a District Manager for Mead, on behalf of Mead, and by Charles Hester on behalf of Contract Harvesters.

Around April 1993, Rigdon, on behalf of Mead, orally informed Contract Harvesters that it would not be given any new delivery orders because its production was no longer needed and because it had cut over the line on some tracts. Rigdon further orally informed Contract Harvesters that it had sixty days to complete work on the delivery orders that were pending. The last day that Contract Harvesters was allowed to deliver cut timber to Mead was June 23, 1993. Appellees argue that they did not breach the contract by electing not to give Contract Harvesters additional tracts of timber to cut and by requiring Contract Harvesters to complete its work under the contract within 60 days. However, it is undisputed that all nine delivery orders gave Contract Harvesters substantial time beyond June 23, 1993, the last date Contract Harvesters was allowed to deliver timber to Mead, to complete the cutting and delivery of the timber.

Charles Hester testified that, out of the nine delivery orders, three delivery orders had not been completed when Contract Har-

vesters was given notice, without reason and opportunity to cure, that it had sixty days to complete its work; that Contract Harvesters was unable to complete cutting the timber on these three tracts due to Mead's premature termination of the contract; that the remaining timber left on these three tracts was given to other loggers to cut; and that Contract Harvesters was not paid for the timber it was unable to cut due to the premature termination of the contract by Mead. Hester further testified that Contract Harvesters ceased doing business on June 23, 1993, because Mead was the only company for which it cut timber.

Further, paragraph 17 of the 1993 annual contract set forth the procedure for early termination of the contract. Under paragraph 17, the contract could "be terminated by either party in the event of a breach of the Agreement by the other party, if such breach [had] not been cured within ten (10) days after written notice to the party accused of breaching the Agreement, setting out the nature of such breach." There was no evidence of record that Mead followed the requirements of paragraph 17 prior to terminating the contract.

Consequently, a genuine issue of fact exists as to such claim, and it was error for the trial court to grant the appellees' motion for summary judgment on the breach of the January 2, 1993 written contract.

2. Contract Harvesters contends that the trial court erred in granting the appellees' motion for summary judgment on its claim based on the appellees' agreement to provide Contract Harvesters with a minimum quota of 850 to 1,000 cords of timber per week. While Contract Harvesters asserts that it brought this claim under the alternative theories of breach of oral contract and fraud as a tort, this was not asserted in the trial court. At the trial level, Contract Harvesters only set forth a claim for fraud. "Grounds for reversal which may be considered on appeal are limited to those which were argued before the trial court." (Citations and punctuation omitted.) *In the Interest of C. W.*, 227 Ga. App. 763, 767-768 (3) (490 SE2d 442) (1997). Therefore, this Court will not consider the oral contract claim on appeal.

In its answer and at summary judgment, Mead denied that it promised Contract Harvesters a certain quota of timber to be cut weekly. However, Contract Harvesters submitted evidence to the contrary, creating a material issue of fact as to fraud. Charles Hester, by both deposition and affidavit, stated that in February 1993, Rigdon, individually and on behalf of Mead, orally promised Contract Harvesters a quota of 850 to 1,000 cords of timber per week, if Contract Harvesters would purchase new equipment and upgrade its existing equipment; that 850 to 1,000 cords of timber would have consisted of between 85 and 120 truck loads of timber; that in reli-

ance on appellees' promise, Contract Harvesters spent approximately $500,000 on new equipment and upgrading its existing equipment; that appellees provided Contract Harvesters with a quota of 850 to 1,000 cords of timber per week for approximately one month; that after about one month, appellees began to lower Contract Harvesters' quota below 850 cords per week; and that within two months, Contract Harvesters' quota was down to 17 to 20 loads per week. Hester further testified that after June 23, 1993, he had to sell almost all of Contract Harvesters' equipment for between $250,000 and $300,000, which was at a loss, and that Contract Harvesters retained only a loader, two log trucks, and a motor grader, which were worth only about $75,000.

Where, as here, "the facts, as testified to by the parties, create a conflict in the evidence as to a material issue, summary judgment is precluded." (Citation omitted.) *Bearden v. Bearden*, 231 Ga. App. 182, 184 (499 SE2d 359) (1998). Accordingly, the trial court's grant of summary judgment to the appellees on Contract Harvesters' fraud claim was error.

3. Contract Harvesters further alleges that the trial court erred in granting appellees' motion for summary judgment, in that there is a genuine issue of fact as to whether Mead was indebted to Contract Harvesters for timber that was delivered and improperly classified as cull wood[1] during 1993.

The evidence shows that when Contract Harvesters delivered a load of timber to the scale house at Mead's sawmill, an employee of Mead would inspect the timber. After the timber was taken off the truck, the driver would be given a ticket which indicated how much of the timber was determined to be cull wood. Contract Harvesters was paid at a reduced rate for the timber determined to be cull wood. Contract Harvesters contends that timber was improperly classified by Mead as cull wood and that it was not paid at the proper rate for this timber.

In support of its motion for summary judgment, Mead submitted as evidence the affidavits of Rigdon and James R. Shepard, who is employed by Mead in its accounting department and holds the position of "Manager, Accounting, Woodlands and Wood Products." Rigdon averred that Contract Harvesters was paid for all the wood delivered to Mead which was determined to be cull wood. Shepard averred that he had examined the accounting records and that Contract Harvesters was paid for all the "timber cut and delivered in the year 1993, with the exception of one check in the amount of $2.25, which

---

[1] Cull wood is timber that is not usable or suitable for a particular cut, does not meet the standards and specifications established by the company for whom it is being cut, and has a substantially reduced value.

was returned by Contract Harvesters."

Mead did not tender any evidence that the timber they designated as cull wood and for which they paid Contract Harvesters at a reduced rate was, in fact, cull wood and not usable in the same manner as the timber not designated as cull wood. However, Contract Harvesters tendered evidence, through both the deposition and affidavit of Hester, that the usual standard in the timber industry was for cull wood to be set aside and not processed with the normal timber. However, Mead processed the timber, which it designated as cull wood, along with, and in the same manner as, the normal timber. This testimony creates an inference that such timber was improperly designated as cull wood and that Contract Harvesters was improperly paid for such timber under the terms of the contract. Accordingly, it was error for the trial court to grant summary judgment to appellees on this claim.

4. Contract Harvesters also alleges that the trial court erred in having ex parte communications with one of the attorneys for the appellees. In this enumeration, Contract Harvesters makes only a general allegation and points to no specific ex parte communications which allegedly occurred. Further, Contract Harvesters "give[s] no reference to the record, cite[s] no authority, and make[s] no argument[.] . . . Therefore, under Court of Appeals Rule 27 (c) (2), this Court deems said claim of error abandoned. [Cits.]" *Chancellor v. Gateway Lincoln-Mercury*, 233 Ga. App. 38, 45 (502 SE2d 799) (1998).

Additionally, this Court, having examined the entire record, finds there is nothing in the record which shows that appellees made any ex parte communications with the trial court. "When enumerations of error are unsupported by the record, no question for decision thereon is presented to this [C]ourt on appeal." (Citations and punctuation omitted.) *Dyer v. State*, 169 Ga. App. 387, 388 (312 SE2d 861) (1984).

*Judgment reversed. Pope, P. J., concurs. Smith, J., concurs in judgment only.*

DECIDED SEPTEMBER 8, 1999.

*Ham, Jenkins, Wilson & Wangerin, Phillip B. Ham*, for appellant.

*Lawson, Davis & Pickren, Paul R. Jordan, Wayne Jernigan*, for appellees.