A01A0341. CITY OF COLUMBUS v. BARNGROVER et al.
(552 SE2d 536)

BLACKBURN, Chief Judge.

In this case for continuing nuisance, trespass, and inverse condemnation resulting from a system of improperly maintained water and sewage drainage pipes, the City of Columbus appeals the jury's award of damages and an injunction to Dr. Kenneth Barngrover, contending that the trial court erred by: (1) entering judgment on a verdict unsupported by sufficient evidence; (2) denying the City's motion for directed verdict; (3) issuing an injunction contrary to the jury verdict and out of term; (4) failing to bar claims based upon sanitary

sewage contamination because appellees did not provide appropriate ante litem notice to the City; and (5) giving or failing to give numerous jury charges.[1]

1. The City contends that the evidence was insufficient to support the verdict, arguing that: (a) it had no duty to maintain the drainage system; (b) the Barngrovers owed a servitude to all landowners at a higher elevation to accept free flowing water; and (c) deeds and plats in the record release the City from liability. We disagree.

Where a jury returns a verdict and it has the approval of the trial judge, we construe the evidence with every inference and presumption in favor of upholding the verdict and do so even if the evidence is in conflict. *Light v. Mason.*[2]

Viewed in this light, the evidence shows that, on July 27, 1991, Dr. Barngrover and his wife, Marla, purchased a home at 3301 Cathryn Drive in Columbus. The Barngrovers' house sits on a multi-acre site at the bottom of a hill that runs the length of Cathryn Drive. Storm water from both Cathryn Drive and other streets in the northeast corner of the subdivision flows into roadside catch basins and is channeled under the Barngrovers' property through a system of storm water and sewage pipes.[3] In addition, a number of grates located on the Barngrovers' property drain storm water into the sewage system.[4] The storm water is finally routed to a manhole located under the Barngrovers' house, where it is then directed away from the property.

In June 1991, the Barngrovers moved into the main house at 3301 Cathryn Drive and rented the guest house to the seller, Caroline Layfield. At that time, the Barngrovers noticed various inlets and drain covers on the property, but were unaware of the system of drainage and sewage pipes that channeled water under the residence

---

[1] We must point out that the City has failed to comply with Court of Appeals Rule 27 (c) (1), which requires that the sequence of argument in a brief follow the enumerations of error and be numbered accordingly. The City lumps several different enumerations together, without any clear indication as to how the argument relates to the various enumerations. Such failure makes it difficult to determine precisely what errors the City is asserting on appeal. Nevertheless, we will address the City's enumerations of error to the extent that they are supported by argument in its brief. See *Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 72 (532 SE2d 463) (2000).

[2] *Light v. Mason*, 225 Ga. App. 260 (1) (483 SE2d 685) (1997).

[3] Testimony at trial established that this section of the drainage system extending from the northeastern corner of the property was plugged in January 1994 (after the Barngrovers moved from the property).

[4] A sanitary sewage trunk line runs under the Barngrovers' land to the north. Various sanitary sewage lines from houses on surrounding properties run through the Barngrovers' property and tie into this trunk line. Testimony at trial showed that a storm water grate located on the Barngrovers' property drained into the sanitary sewer system until the grate was plugged by the City in May 1992.

and did not know about the manhole located under the home.[5]

On July 2, 1991, the Barngrovers discovered a sinkhole on the property near the carport. As the City had previously repaired sinkholes on the property,[6] Layfield called the City which, in turn, sent workers to excavate the site of the cave-in. On November 23, 1992, however, a large sinkhole recurred next to the carport, and, once again, the City was called to the property to perform repairs. Richard McKee, the City's Director of Public Services, inspected the sinkhole and observed water rushing into the hole from the underground drainage system. McKee then directed a City crew to fill the hole with dirt.

This remedy proved to be only a temporary and incomplete fix, however, as the Barngrovers presented evidence of damage to the main residence from the November cave-in, including settlement of the carport foundation at the site of the sinkhole and a crack in the carport wall. Moreover, Dr. Barngrover filled the large sinkhole a number of times, but drainage washed the fill away. And, exacerbating the situation, additional small sinkholes developed on the property after the November incident.

On January 29, 1993, Dr. Barngrover sent a letter to the City demanding that it repair the damage or he would file suit. McKee responded on December 3, 1992, acknowledging the failure of the "drainage system" and the resulting damage to the property and carport as a result of "cave-ins." McKee wrote: "[W]e are working in coordination with the water works to ascertain the full extent of the problem." McKee promised "immediate" action to correct the cave-ins. Despite McKee's assurances, however, the City has consistently refused to make any repairs to the property since 1992. Accordingly, on February 22, 1993, the Barngrovers filed suit for nuisance, trespass, and inverse condemnation resulting from the malfunctioning drainage system.

Sometime after filing suit, the Barngrovers began to notice a strange smell coming from their property and decided to retain an

---

[5] The manhole where the storm drainage converges ·is located under a kitchen/carport addition to the main residence built in 1987 by the previous owners of the property. It is undisputed that the City issued a permit for the construction of this addition. At trial, City officials claimed to have no knowledge of the manhole at the time the construction permit was issued because there was no map of record showing the manhole or any recorded easement relating to it or the drainage system. Similarly, there were no maps or plats of record showing the location or course of the drainage system. Instead, the City relied primarily on the knowledge of its field workers to ascertain the location of the lines in the Clubview Heights area.

[6] Layfield informed the Barngrovers that the City repaired sinkholes on the property in the past and, if necessary, the Barngrovers should call the City for repairs of this nature in the future. Several City work orders indicate that the City worked on sinkholes at 3301 Cathryn Drive prior to the date the Barngrovers purchased the property.

environmental consultant to test for contaminants. The consultant found high levels of fecal coliform bacteria and opined that the sanitary sewer system was broken, causing cross-contamination of storm and sanitary waters on the property. Because of this contamination, the consultant advised the Barngrovers that their home was uninhabitable, and the family moved away in September 1993.

After the ensuing trial, the jury found in favor of Barngrover on August 4, 1999, and awarded him $237,000 for attorney fees, out-of-pocket expenses, and loss of enjoyment of his property.

(a) The City argues that the evidence was insufficient to show that it constructed, owned, accepted title to, or otherwise had a duty to maintain the drainage system. It is, however, well established that "where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the *repeated* flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable." *Hibbs v. City of Riverdale.*[7] See *Columbia County v. Doolittle;*[8] *DeKalb County v. Orwig;*[9] *Martin v. City of Fort Valley;*[10] *Ingram v. Baldwin County.*[11] Accordingly, it is not necessary for the City to have actually constructed the drainage system if it undertook to maintain it. Neither is it necessary for the City to own the land or hold title to the drainage system. "While ownership of property generally may give rise to a nuisance when property is used to cause harm to others, such ownership is not an essential element of the cause of action for nuisance." *Fielder v. Rice Constr. Co.*[12] Rather, the exercise of dominion or control over the property causing the harm is sufficient to establish nuisance liability. *Hibbs,* 267 Ga. at 339. See *Fulton County v. Wheaton,*[13] overruled on other grounds, *Orwig,* supra; *Fielder,* supra at 365-366.

Here, the record shows that the City undertook to maintain the drainage system. Director McKee acknowledged that the drainage system under the Barngrovers' property carried water channeled from City streets, was part of the City system, and that the City accepted responsibility for maintaining the system. Additional evidence showed that the City treated the drainage system as City property and routinely accessed and repaired the lines with City funds despite the fact that they were located under private property. Former owner Brent Buck testified that the City came to the property

---

[7] (Emphasis in original.) *Hibbs v. City of Riverdale,* 267 Ga. 337, 338 (478 SE2d 121) (1996).

[8] *Columbia County v. Doolittle,* 270 Ga. 490, 493 (3) (512 SE2d 236) (1999).

[9] *DeKalb County v. Orwig,* 261 Ga. 137, 138-139 (2) (402 SE2d 513) (1991).

[10] *Martin v. City of Fort Valley,* 235 Ga. App. 20 (508 SE2d 244) (1998).

[11] *Ingram v. Baldwin County,* 149 Ga. App. 422, 423 (254 SE2d 429) (1979).

[12] *Fielder v. Rice Constr. Co.,* 239 Ga. App. 362, 365 (1) (522 SE2d 13) (1999).

[13] *Fulton County v. Wheaton,* 252 Ga. 49, 50 (1) (310 SE2d 910) (1984).

four or five times at his request to fill sinkholes, help with erosion problems, or improve the flow of the sewers. Moreover, Charlie Veasley, Assistant Chief of Rainwater Management for the City of Columbus, testified that, at the City's direction, he maintained a portion of the drainage system extending under 3301 Cathryn Drive for over 30 years.

Based on this evidence, the jury had sufficient grounds to conclude that the City exercised dominion and control over the drainage system so as to give rise to a duty to maintain it. Cf. *City of Lawrenceville v. Macko*[14] (finding "no evidence" that the City exercised any control over the drainage system).

(b) The City further contends that it was entitled to a directed verdict because the Barngrovers owed the City, as the higher, adjoining property owner, a servitude to accept the flow of surface water across their land. This rule of common law cited by the City, however, applies only when the higher, adjoining property owner does not increase the flow of water by artificial means. *Brown v. Tomlinson*.[15] Here, even if the City did not initially construct it,[16] the City actively maintains a drainage system that concentrates water from City streets and channels it under the Barngrovers' property. For this reason alone, the City's argument must fail. Moreover, a competing principle of law applies to the facts of this case that prohibits the City from constructing or maintaining a drainage system that repeatedly floods and damages private property so as to constitute a continuing nuisance. See *Hibbs*, 267 Ga. at 338.

(c) Next, the City vaguely contends that "the deeds and plats in evidence" bind the Barngrovers and release the City from liability. We cannot determine from this general statement the basis of the City's argument. The City violates Court of Appeals Rule 27 (c) by failing to cite to facts in the record in support of this argument. Therefore, we consider it abandoned. See *Contract Harvesters v. Meade Coated Bd.*[17]

2. The City contends that the trial court erred by failing to enter a directed verdict in its favor on appellees' nuisance claim.

A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a verdict. OCGA § 9-11-50 (a). In determining

---

[14] *City of Lawrenceville v. Macko*, 211 Ga. App. 312, 316 (3) (439 SE2d 95) (1993).

[15] *Brown v. Tomlinson*, 246 Ga. 513, 514 (272 SE2d 258) (1980).

[16] The evidence did not establish who constructed the drainage system.

[17] *Contract Harvesters v. Meade Coated Bd.*, 239 Ga. App. 853, 857 (522 SE2d 260) (1999).

whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

*Driggers v. Campbell.*[18]

As the evidence in this case was sufficient to support the verdict against the City, the trial court did not err in denying the City's motion for directed verdict.

3. The City contends that, after entering judgment on September 1, 1999, the trial court improperly amended that order on December 1, 1999, therein outlining specific steps that the City must take to abate the continuing nuisance on the Barngrovers' property. Specifically, the City argues that the latter order was (a) entered out of term and (b) exceeds the scope of the jury verdict by expanding the injunction beyond the findings of the jury to include the abatement of unspecified nuisances, namely, contamination from sanitary sewage.

The record shows that the jury returned its verdict on August 4, 1999, which reads as follows:

> We find for the plaintiff. We award $237,000 compensation for attorney fees, out of pocket expenses and loss of enjoyment of the property. We direct that the City abate the drainage system away from the house. We also direct that the City repair the house to its 1991 condition. Specifically, they will repair any damage caused in abating the drainage system, any walls, foundation or other structural defects associated with the sinkholes and/or repair/replacement of drainage system. This must be accomplished within 6 months from this date.

On September 1, 1999, the trial court entered its judgment, setting forth verbatim the language of the verdict and ordering the abatement of "all nuisances created, maintained and in existence" on the Barngrovers' property. With the agreement of both sides, the trial court expressly retained jurisdiction over the equitable portion of the judgment.

Then, on September 9, 1999, at the City's request, the court "clarified" that the compensatory and injunctive relief awarded by the jury was limited "by the language of the jury verdict" and that abatement of the nuisances was limited to those nuisances specifically identified by the jury. In response, on September 24, 1999, the

---

[18] *Driggers v. Campbell*, 247 Ga. App. 300, 302 (2) (543 SE2d 787) (2000).

City submitted an abatement plan.

On December 1, 1999, however, the trial court entered an order rejecting the City's abatement plan and setting forth in detail the required abatement work, including measures to remove and reroute the drainage system (both sanitary and storm water), remove and test contaminated soil, repair the Barngrovers' home and property to its 1991 condition, and rebuild all affected structures.

(a) The City contends that the trial court's December 1, 1999 order was improperly entered outside the applicable term of court.[19]

In general, OCGA § 9-12-9 requires that judgments and executions issued by a court must conform to the verdict. However, in proper cases, our superior courts may mold the verdict "so as to do full justice to the parties" and mold their decrees "so as to meet the exigencies of each case." OCGA §§ 9-12-5; 23-4-31. However, this "molding" authority is not without limits. "[A]fter the expiration of the term at which a decree was entered[,] it is [beyond] the power of the court to modify and revise it in any matter of substance or in any manner affecting the merits." *Long v. Long.*[20]

Here, the trial court's December 1, 1999 order does not modify the decree in any matter of substance not contemplated by the parties at the time the decree was entered. The original verdict and order require the City to "repair the house to its 1991 condition." To achieve this goal, the City would necessarily have to remedy the fecal coliform contamination caused by the malfunctioning pipes on the property. As such, the trial court's inclusion of this directive in the December 1, 1999 order neither modified nor revised its previous decree in a way which altered the merits of this action.

(b) The City also contends that the trial court's December 1, 1999 order exceeded the scope of the jury's verdict. However, "[t]he court may construe a verdict, which is not explicit in its terms, in the light of the pleadings, the issues made by the evidence, and the charge." (Punctuation omitted.) *Brown v. Techdata Corp.*[21] Thus, "[a]fter the jury return[s] a general verdict finding a nuisance existed, the trial court was authorized under [OCGA § 23-4-31] to mold its decree so as to meet the exigencies of the case and the prayers of the plaintiffs." *City of Cordele v. Hobby.*[22] See *Brown*, 238 Ga. at 629.

---

[19] OCGA § 15-6-3 (8) fixes the terms of court for Muscogee County. In that regard, the September 1, 1999 judgment and September 9, 1999 "clarification" were entered during the August term (August 2, 1999 through October 4, 1999). Similarly, the City filed its September 24, 1999 plans to implement the injunctive relief during the August term. However, the court did not enter its order on such submission until December 1, 1999, during the October term of court.

[20] *Long v. Long*, 247 Ga. 624, 625 (278 SE2d 370) (1981).

[21] *Brown v. Techdata Corp.*, 238 Ga. 622, 629 (234 SE2d 787) (1977).

[22] *City of Cordele v. Hobby*, 240 Ga. 207 (240 SE2d 16) (1977).

Again, the verdict requires the City to "abate the drainage sys-
tem away from the house" and to "repair the house to its 1991 condi-
tion." The Barngrovers presented evidence of damage to their home
and property from both storm water and sanitary sewage. The court
found the City's abatement plan to be deficient and, in doing so,
based upon the evidence presented at trial, molded its decree in order
to provide the City with detailed directions on how to abate the nui-
sance. It was within the trial court's authority under OCGA § 23-4-31
to mold its injunction to meet the exigencies of the case. There was no
error.

4. The City next contends that the Barngrovers failed to provide
sufficient ante litem notice of its claims regarding contamination of
their property from sanitary sewage leaking from the drainage sys-
tem. We disagree.

Under Georgia law, claimants must present ante litem notice of
their claims to municipalities and county governments. See OCGA
§§ 36-33-5 (municipalities); 36-11-1 (county governments). The notice
requirements imposed by OCGA §§ 36-33-5 and 36-11-1 allow gov-
ernments the opportunity to investigate potential claims, ascertain
the evidence, and avoid unnecessary litigation. *Burton v. DeKalb
County*.[23] Substantial compliance is all that is required to meet the
statutory notice requirements. Id. See *City of Atlanta v. Frank,*[24]
overruled on other grounds, *City of Atlanta v. Black*.[25]

For purposes of ante litem notice, the City in this case must be
treated as a county. In *Bowen v. Columbus, Ga.,*[26] our Supreme Court
briefly discussed the consolidation of the governments of the City and
Muscogee County. See also *Troup County Elec. Membership Corp. v.
Ga. Power Co.*[27] (reviewing in detail the consolidation of the City of
Columbus and Muscogee County). The Court pointed out that the
City was abolished by the legislature when the consolidated govern-
ment was created. *Bowen,* supra at 463. The City's charter was
amended by the legislature in 1983 to read: " '8-202. Tort Liability.
The tort liability, expressly including liability based on a theory of
nuisance, of the consolidated government shall be the tort liability
applicable to counties.' " Id. at 462 (citing Ga. L. 1983, p. 4493). In
*Bowen,* the Supreme Court found the amendment to be constitu-
tional and extended county immunity to the City of Columbus. Id. at
464 (5).

---

[23] *Burton v. DeKalb County*, 202 Ga. App. 676, 678 (415 SE2d 647) (1992).
[24] *City of Atlanta v. Frank*, 120 Ga. App. 273 (170 SE2d 265) (1969).
[25] *City of Atlanta v. Black*, 265 Ga. 425, 427 (457 SE2d 551) (1995).
[26] *Bowen v. Columbus, Ga.*, 256 Ga. 462, 463 (1) (349 SE2d 740) (1986).
[27] *Troup County Elec. Membership Corp. v. Ga. Power Co.*, 229 Ga. 348 (191 SE2d 33)
(1972).

Accordingly, OCGA § 36-11-1 applies to this case. And, this statute provides that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred."

On January 29, 1993, the Barngrovers sent ante litem notice to the City alleging damages as a result of the continuing nuisance that the City maintained on their property.[28] The notice identified the nature of the damage (erosion, sinkholes, damage to improvements), the location of the damage (3301 Cathryn Drive), the cause (the City's failure to maintain the "drainage system," which included interconnected sanitary sewage and water pipes), and nature of the potential cause of action (nuisance). The Barngrovers were not required to identify the precise nature of the effluent causing the property damage (i.e., sanitary sewage). The City was on notice and could have investigated, as the Barngrovers did, to determine the nature of the contamination. We find that the Barngrovers substantially complied with the statutory ante litem requirements. There was no error.

5. The City claims that the trial court erred by giving or failing to give certain jury charges.

(a) The City argues that the trial court improperly expressed its opinion as to the evidence, in violation of OCGA § 9-10-7, because it gave a charge to the jury consisting of a synopsis of the Barngrovers' contentions as plaintiffs.

OCGA § 9-10-7 provides, in part: "It is error for any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved." The charge must be viewed as a whole to determine whether the trial court violated OCGA § 9-10-7. See *Cox v. Gen. Motors Corp.*[29]

Here, the court prefaced its reading of the contested charge with a clear statement that it was about to discuss the "plaintiffs' contentions." Along with its general instructions to the jury at the close of the trial, the court cautioned the jury "not [to] be influenced by anything that I've done or said or any actions that I may or may not have taken, or any movement, or any laughter, or any comment that I might have made." In addition, the court instructed the jury before the start of the trial that it was "not appropriate for the Court to comment on any evidence to the extent that it might get you to make up your minds" and that "[i]t's not proper for me to inject my opinion into this." Finally, the court explained twice — once before and once after the presentation of evidence — that the Barngrovers, as plain-

---

[28] The City does not contend that the letter was improperly addressed or that it was not received.

[29] *Cox v. Gen. Motors Corp.*, 187 Ga. App. 176, 178 (369 SE2d 525) (1988).

tiffs, carried the burden of proving their case. In the context of the entire charge, we conclude that the synopsis of the Barngrovers' contentions did not constitute an improper opinion given by the court upon the evidence. See *Hathaway v. Bishop.*[30]

(b) Next, the City claims that the trial court erred by charging the jury that the City attorney, as the City's agent, binds the City through his conduct. The City admits that it is bound by the acts of the City attorney, but "only if he is authorized to do something." The City cites OCGA § 45-6-5[31] and *City of Atlanta v. Black*, supra, as support, arguing that the powers of City officials are limited to those defined and conferred by law. While the City's reading of the law is correct, the City fails to point to a specific limitation on the City attorney's authority that would have required a different charge under the facts and theories of this case. Cf. *Hibbs v. City of Riverdale*[32] (record was clear that public works director was required to leave any decisions regarding the property to the City manager and council). Consequently, we find no error.

(c) The City further claims that the trial court improperly charged the jury on the law of damages, contending that its liability is governed by the law of nuisance as it applies to counties and therefore only inverse condemnation damages are available.

While this conclusion is correct, see *Orwig*, supra at 138, any error concerning the damage charge was waived. "An appellant's voluntary payment of the judgment renders moot the issues sought to be determined on appeal." *Nash v. Pierce.*[33] Here, the City voluntarily paid the judgment. On October 15, 1999, the City tendered a check in the amount of $240,634.30 to the Barngrovers in satisfaction of the damages award. This amount was later paid into the trial court's registry and distributed. There are no facts of record which would indicate that this payment was involuntary. Therefore, the issue is moot, and the City cannot complain about an improper damages charge. See OCGA § 5-6-48 (b) (3).[34]

(d) The City claims the trial court erred by giving a number of charges concerning municipal responsibility for the maintenance of drainage systems. In its argument, however, the City, without addressing a specific charge, asserts one ground in favor of reversal: In an action based on negligence alone, a municipality may not be

---

[30] *Hathaway v. Bishop*, 214 Ga. App. 870 (1) (449 SE2d 318) (1994).
[31] OCGA § 45-6-5 provides: "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power."
[32] *Hibbs v. City of Riverdale*, 227 Ga. App. 889, 890 (490 SE2d 436) (1997).
[33] *Nash v. Pierce*, 238 Ga. App. 466 (1) (519 SE2d 462) (1999).
[34] We note, however, that the other issues raised by the appeal relate to the injunctive relief and are therefore appropriate for review.

held liable for failing to maintain a drainage system because such maintenance pertains to its governmental as opposed to ministerial functions. This argument is without merit for a number of reasons.

First, the Barngrovers did not seek to recover "based on negligence alone," and the trial court did not instruct the jury under a negligence theory. Instead, this case turns on the City's *nuisance* liability, which is to be distinguished from an action based upon negligence. *Hibbs*, 267 Ga. at 338. Next, the City's liability is governed by nuisance law as it applies to *counties*, and county governments are required by our Constitution to compensate private landowners for damage to their property that amounts to a "taking." *Orwig*, supra at 138. Finally, even if we treat the City as a municipality (as opposed to a county), it would not enjoy immunity based upon a determination that the maintenance of the drainage system relates to a governmental function. "While a municipality enjoys sovereign immunity from liability for negligent acts done in the exercise of a governmental function, it may be liable for damages it cause[d] to a third party from the creation or maintenance of a nuisance." *Hibbs*, 267 Ga. at 337. See *City of Rome v. Turk*.[35] The trial court did not err.

(e) Also without merit is the City's argument that the trial court erroneously instructed the jury concerning the law of easements. Contrary to the City's contention, we find that there was evidence to support this charge.

(f) The City next claims that the trial court erred by failing to appropriately instruct the jury concerning an award of attorney fees under OCGA § 13-6-11[36] because the trial court did not track the language of the statute or otherwise appropriately explain the standard. For the same reasons stated in Division 5 (c), this error was waived by voluntary payment of the attorney fees award. See *Nash*, supra at 466 (1). Moreover, had the error been preserved, the trial court properly instructed the jury that it could award attorney fees if it found the City was stubbornly litigious.

The trial court instructed the jury as follows:

All right, ladies and gentlemen, on the issue of attorney's fees. I'm going to let you decide about attorney's fees. The law says that expenses of the litigation to include attorney's fees are allowed to be awarded as damages in nuisance cases. You may award expenses for [litigation] if you find

---

[35] *City of Rome v. Turk*, 235 Ga. 223 (219 SE2d 97) (1975).

[36] OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

that the defendant has been stubbornly litigious. That is a question of fact for you to decide. Attorney's fees can be recovered from a municipality.

In this case, the City was well aware of the problems for years and had performed repairs in the past. Notwithstanding the history involved, the City suddenly refused to repair the drainage system that it maintained, which resulted in additional damage to the Barngrover property. We find no error here.

(g) The City claims the trial court erred by refusing to charge the jury that governments may not be held liable for failure to abate nuisances on private property. This is an incorrect statement of the law. See *Hibbs*, 267 Ga. at 338. Therefore, we find no error.

(h) Citing *Macko*, supra, the City argues that the trial court erred by refusing to charge the jury that it may not be held liable for the negligent approval of building permits. In *Macko*, during our discussion of the plaintiff's negligence claim, we determined that, under the "public duty doctrine," the plaintiff failed to establish that it had a special relationship with the City different from that which the City enjoyed with the public in general. Id. at 315. Accordingly, under the facts of that case, the City did not owe the plaintiff a duty and therefore could not be held liable for negligent inspection of the property or for negligently issuing a building permit. Id. Here, the Barngrovers did not allege negligent approval of building permits, but rather made a nuisance claim. In that regard, the City clearly owed the Barngrovers a duty not to create a nuisance by failing to maintain the drainage system. See *Hibbs*, 267 Ga. at 338. The trial court did not err by refusing the City's charges.

(i) The City argues that the trial court erred by refusing to give its charges containing the "ultra vires rule," which the City claims was an essential defense. First, the City claims the trial court should have instructed: "I charge you that a contract that restricts the governmental or legislative functions of the Columbus council is beyond the power of any executive official to enter and is therefore a nullity and void and unenforceable even though a person dealing with the government official may be unaware of the fact." However, there were no allegations of breach of contract in this case. Therefore, this charge is not relevant to the contentions of the parties and, as such, not adjusted to the facts of this case.

Next, the City claims that the trial court erroneously refused to charge: "I charge you that any commitment made by the defendant's Director of Public Services to plaintiffs to assume responsibility for or accept any drainage system on plaintiffs' property was void and has no binding effect on defendant without the specific authorization of the Columbus Council." This enumeration parallels the argument

that the City makes in Division 5 (b) above concerning the power of the City attorney to bind the City as its agent. The City's argument here is similarly without merit. Namely, the City fails to argue any specific limitation on the director's authority that requires a different charge under the facts and theories of this case. Moreover, to the extent that the director was not authorized to assume responsibility for the drainage system on behalf of the City, as he did, by virtue of his December 3, 1992 letter to the Barngrovers, there was substantial evidence establishing that the City had already assumed responsibility for the system based on its conduct over the years. The director's letter was admissible as a confirmation of the City's previous acceptance of responsibility for the system. Therefore, any error was harmless.

(j) The City claims that the trial court erred by failing to instruct the jury that, under OCGA § 36-11-1, all claims against counties must be presented within 12 months after they accrue or the same are barred. The City argues, as it did in Division 4 above, that this statute of limitation bars recovery for sanitary sewage contamination or arising from a continuing nuisance. As explained in Division 4, the Barngrovers substantially complied with the ante litem notice requirements imposed by OCGA § 36-11-1. The Barngrovers provided notice to the City within 12 months of the November 23, 1992 blowout by virtue of its January 29, 1993 letter to Director McKee. Accordingly, the jury was authorized to award damages for any injury during the preceding 12 months, including any injury resulting from sanitary sewage contamination or arising from a continuing nuisance. The trial court did not err in this regard.

(k) Finally, we reject the City's argument that the trial court erred by failing to inform the jury of the common law principle that a property owner owns downward and upward indefinitely. As explained in Division 1 (a), ownership of property is not the determinative factor to establish nuisance liability. *Fielder*, supra at 365-366. Therefore, the trial court did not err by refusing the City's charge.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 16, 2001.

*Eugene H. Polleys, Jr.*, for appellant.
*Gary O. Bruce, James D. Patrick, Jr.*, for appellees.