**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 14, 2015**

# In the Court of Appeals of Georgia

A15A1145. CITY OF GREENSBORO, GEORGIA v. ROWLAND et al.

MCMILLIAN, Judge.

The City of Greensboro, Georgia (the "City") appeals the trial court's denial of its motion to dismiss a complaint filed by Tony Rowland and Flenard Rowland (the "Rowlands"), asserting claims for inverse condemnation, trespass, intentional tort, and nuisance,[1] arising out of the City's construction and maintenance of a drainage ditch across their properties.

---

[1] In their complaint, the Rowlands seek to recover compensatory and punitive damages, as well as obtain injunctive relief. The trial court granted the City's motion to dismiss as to the claim for punitive damages, but denied the motion as to the remaining claims.

As factual support for the Rowlands' claims, the complaint alleges that the Rowlands each own real property on Martin Luther King, Jr. Drive ("MLK Drive") in the City (the "Property"). After receiving a $500,000 Community Development Block Grant ("CDBG") in 2011 for improvements to its water and drainage system, the City amended the CDBG to provide for drainage improvements along MLK Drive (the "Project"). The pre-existing drainage ditch in the area had a history of flooding the property downstream, and the CDBG project increased the water flow and the volume rate onto the affected areas. The City began to install expansion piping in the drainage ditch to remedy this problem, and as part of this Project, the City installed the expansion pipe ditch directly through the Property. The Rowlands informed the City that the manner in which the Project was being undertaken was flooding the Property, "causing environmental, sanitation, health safety, and pecuniary damage."

The Rowlands assert that the City violated federal regulations, local ordinances, and local health and safety codes in implementing the Project. They allege that although the City is fully aware of the damage to the Property caused by the Project, it continues to damage it by maintaining its water system on their land. And although the City has purchased several easements from other properties through

2

which the drainage apparatus runs, it has not obtained an easement from the Rowlands or compensated them in any way for the damage to the Property.

The City moved to dismiss the Rowlands' complaint, arguing that they had failed to plead and prove waiver of the City's sovereign immunity as to their claims and that they had failed to substantially comply with the requirement for ante litem notice under OCGA § 36-33-5. The trial court rejected these arguments without explanation, and this appeal followed.

1. The City first asserts that the trial court erred in denying their motion to dismiss on sovereign immunity grounds, and we review this argument de novo. See *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014). See also *Liberty County School Dist. v. Halliburton*, 328 Ga. App. 422, 423 (762 SE2d 138) (2014) (appellate review of trial court's ruling on motion to dismiss is de novo).

Under Georgia law, municipalities are protected by sovereign immunity pursuant to Article IX, Section II, Paragraph IX[2] of the Georgia Constitution unless that immunity is waived by the General Assembly or by the terms of the Constitution

---

[2] This paragraph provides: "[t]he General Assembly may waive the immunity of counties, municipalities, and school districts by law."

3

itself. See *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015); *Sustainable Coast*, 294 Ga. at 599. In *Sustainable Coast*, our Supreme Court explained that although in *City of Thomasville v. Shank*, 263 Ga. 624, 625 (437 SE2d 306) (1993), the Court had recognized a "nuisance exception" to sovereign immunity and had "'reaffirm(ed) the longstanding principle that a municipality is liable for creating or maintaining a nuisance which constitutes either a danger to life and health or a taking of property,'" *Shank* actually stands for the proposition that "the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity in such cases." 294 Ga. at 600 (2). In that discussion, the Court cited with approval *Columbia County v. Doolittle*, 270 Ga. 490 (1) (512 SE2d 236) (1999), explaining "that the eminent domain provision of the Georgia Constitution waives sovereign immunity in an inverse condemnation action, and therefore, a county may be sued for damages and enjoined for creating or maintaining a nuisance." Id.

Although the sovereign immunity discussion in *Sustainable Coast* was with respect to the waiver of sovereign immunity for the State under Article I, Section II, Paragraph IX (e) of the Georgia Constitution,[3] we see no reason why the rationale of

---

[3] This section provides:

*Sustainable Coast* does not equally apply to waivers of sovereign immunity under Article IX, Section II, Paragraph IX, particularly where *Sustainable Coast* relied upon and clarified its decision in *Shank*, which dealt with sovereign immunity for municipalities. Moreover, our Supreme Court has specifically found that "where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the *repeated* flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable." (Emphasis in original.) *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

Here, because the Rowlands assert that the damage from the City's drainage system amounts to an unlawful taking of their Property, sovereign immunity has been

Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

5

waived by the terms of the Constitution.[4] Therefore, the trial court properly denied the City's motion to dismiss on this ground.

2. The City further asserts that the trial court erred in denying its motion to dismiss on the ground that the Rowlands failed to provide the City with a timely ante litem notice under OCGA § 36-33-5 identifying the specific events underlying their claims.

Subsection (b) of that statute provides:

Within six months of the happening of the event upon which a claim against a municipal corporation is predicated, the person, firm, or corporation having the claim shall present the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury. No action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment.

---

[4] Because we find that sovereign immunity does not apply, it is unnecessary for us to undertake an analysis of whether sovereign immunity has been waived under OCGA § 36-33-1, which "for more than a century been interpreted to mean that municipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for the negligent performance of their ministerial duties." *Mitcham*, 296 Ga. at 577-578 (1).

6

OCGA § 36-33-5 (b). Because this statute is in derogation of the common law, "[i]t is well settled . . . that substantial compliance with OCGA § 36-33-5 is all that is required." (Citation and punctuation omitted.) *Simmons v. Mayor & Aldermen of the City of Savannah*, 303 Ga. App. 452, 454 (693 SE2d 517) (2010). Nevertheless,

> there is no precise standard for determining whether any given ante[] litem notice is substantively sufficient. . . . The information supplied will be deemed sufficient if it puts a municipality on notice of the general character of the complaint, and, in a general way, of the time, place, and extent of the injury. The act recognizes, by the use of the words ["]as nearly as practicable,["] that absolute exactness need not be had.

(Citations and punctuation omitted.) *Owens v. City of Greenville*, 290 Ga. 557, 561-562 (4) (722 SE2d 755) (2012).

The Rowlands' original complaint alleged that "[r]equisite notice of the claims herein has been submitted to [the City], after which the same were rejected."[5] Attached to the complaint as Exhibit 1 is a copy of a letter dated October 11, 2013 from the Rowlands' counsel to the City. The letter states that it is in response to "the City's Notice of Early Public Review of Floodplain Compliance," and asserts that the

---

[5] Although the City notes that the Complaint does not specifically allege that the Rowlands complied with OCGA § 36-33-5, they have not pointed us to any authority requiring such detailed pleading.

7

Rowlands "again wish to impart notice of damages to real property and unlawful taking by the run-off of drainage water on their property caused by the City's actions, which effectively devalue their property and subject them to flooding, insect and reptile infestation, and environmental and sanitation degradation." The complaint also attached as Exhibit 2 a letter from an attorney for the City to the Rowlands' counsel in response to the October 11 letter, stating the City's position that any damage to the Property is not the result of any action by the City, but rather is the "direct result of actions by Mr. Rowland and his failure to maintain a pipe which he has installed in the ditch, which is a natural drain."

In response to the City's motion to dismiss, the Rowlands amended their complaint to include two further exhibits "as part of ante litem notice." These exhibits each contain a letter, dated September 16, 2013 and sent to City officials. These letters specifically reference the street addresses of each of the Rowlands' properties and inform the City that the Rowlands had retained counsel in connection with "run-off of waste water on their property as a result of a project undertaken by the City of Greensboro, which has ultimately resulted in an unlawful taking of their property rights." The letters indicate that counsel had been authorized to settle the case before the initiation of formal litigation. The Rowlands' second amended complaint

8

additionally attached as an exhibit an affidavit from the Rowlands' counsel averring that she mailed the September 16 and October 11 letters to the City officials "with proper and adequate postage thereon, to ensure delivery."

Although the City asserts that the Rowlands' letters are not adequate ante litem notice under OCGA § 36-33-5 (b), we find that the letters were sufficient to put the City "on notice of the general character of the complaint," namely the claim of a continuing nuisance on the Property caused by the City's water drainage system, and "in a general way, of the time, place, and extent of the injury," (i.e., that the flooding was ongoing and that the damage amounted to a taking of the Property). *Owens*, 290 Ga. at 562 (4).

The City further argues, however, that the ante litem notice is insufficient because it fails to state any specific event, "the happening of which gives rise to a claim of trespass, nuisance, or inverse condemnation," making it impossible to determine whether the Rowlands gave notice within six months of the event as required under OCGA § 35-33-5 (b). But as our Supreme Court recognized in *City of Chamblee v. Maxwell*, 264 Ga. 635, 636 (452 SE2d 488) (1994), a claim like the Rowlands' for repeated instances of flooding is a claim for continuing trespass or nuisance, "predicated upon the happening of a continuous series of 'events,'" and

9

"[w]here a trespass is continuing in nature, . . . a new cause of action arises daily." (Citations and punctuation omitted.) Id. Accordingly, the Rowlands were not required to give notice of a specific date of each injury. Rather, the date of the notice limits the extent of recovery for damages incurred prior to the notice. Therefore,

> upon giving the six-month notice required by OCGA § 36-33-5, a property owner who incurs damage as a result of a continuing nuisance or trespass maintained by a municipality is entitled, within [the applicable limitations period], to recover only those damages incurred during the six months preceding the giving of such notice. The recovery of any damages incurred prior thereto would be barred, where no timely notice of a claim therefor was given in accordance with the provisions of OCGA § 36-33-5.

Id. at 637. See also *Savage v. E. R. Snell Contractor, Inc.*, 295 Ga. App. 319, 324-325 (3) (a) (672 SE2d 1) (2008).

We find, therefore, that the trial court properly denied the City's motion to dismiss for failure to give proper ante litem notice.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

10