**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0149. WRIGHT et al. v. CITY OF GREENSBORO.

REESE, Judge.

Raymond Wright, Sr., Laquita Pope, and their three minor children, along with Amineh Wright Dickson, Connie Wright Alexander, and Cornelius Wright III[1] (collectively, the "Appellants") sued the City of Greensboro ("City"). In their complaint, the Appellants alleged that the City's negligence in maintaining a sewer line that ran through their property ("Property") resulted in a continuing nuisance that damaged the Property and created a serious health hazard. The trial court granted the City's motion to dismiss the Appellants' claim for monetary damages arising from the

---

[1] Raymond Wright, Sr., Amineh Wright Dickson, Connie Wright Alexander, and Cornelius Wright III are siblings, each of whom inherited an undivided one-fourth interest in the property at issue. At the time the complaint was filed, Raymond Wright, Sr., Laquita Pope, and their three children resided on the subject property.

alleged continuing nuisance, ruling that the Appellants' ante litem notices had failed to specify the amount of money damages they were seeking from the City and, thus, had failed to comply with the notice requirements of OCGA § 36-33-5 (e). The Appellants appeal, asserting that the trial court erred in dismissing their claim for monetary damages because their complaint was based upon a continuing nuisance and, therefore, OCGA § 36-33-5 (e) did not apply. For the reasons set forth, infra, we affirm.

The pleadings,[2] when viewed in the light most favorable to the Appellants,[3] show the following facts. The Appellants are the co-owners and/or residents of the Property. As part of its sewer system, the City owns and operates a sewage pipeline that traverses the Property, and a manhole that leads to the pipeline is present on the Property. On January 9, 2015, the Appellants sent a letter to the City's mayor and council notifying them that, over the past few days, raw (untreated) sewage had been

---

[2] When considering a motion to dismiss a complaint, the "pleadings" include the exhibits attached to the complaint. See *Lord v. Lowe*, 318 Ga. App. 222, 223 (741 SE2d 155) (2012) ("'A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.' OCGA § 9-11-10 (c). Thus, in ruling on a motion to dismiss, a trial court is authorized to consider exhibits attached to and incorporated into the complaint."). In this case, the pleadings include the ante litem notice letters sent by the Appellants to the City.

[3] See *Harrell v. City of Griffin*, 346 Ga. App. 635, 636 (816 SE2d 738) (2018).

flowing out of the manhole from the pipeline and had flooded part of the Property. Not only did this sewage damage the Property and create a serious health hazard, but it attracted a "large number of buzzards," which roosted in the nearby trees and "shower[ed]" the Property with excrement. According to the notices, the sewage flooding constituted a continuing nuisance, trespass, and negligence per se and, if the problem was not alleviated, it could entitle the Appellants to compensatory damages, remediation of the affected areas of the Property, attorney fees, and litigation expenses. The Appellants demanded that the City take whatever actions were necessary to permanently abate the nuisance.

Over two years later, on March 20, 2017, the Appellants again sent a letter to the City notifying it that its lack of maintenance of its sewage system continued to cause raw sewage to flood their Property. According to the notice, the actions the City had taken to address the problem during the prior two years had "not reduced or fixed the problem to any extent[.]" The Appellants asserted that, in addition to creating an ongoing health hazard, the continuing nuisance had reduced the value of their individual interests in the Property and had interfered with their use and enjoyment of the Property in an amount "to be determined by a jury of their peers as allowed and provided by law." The Appellants asked that the City fix the problem "quickly and

3

completely" in order to "totally eliminat[e] this nuisance and trespass situation," but added that eliminating the problem at that point would not reduce the damages they had already incurred. Then, on April 19, 2017,[4] the Appellants sent an "Update" letter to the City concerning the "serious health issue[ ] created by the [C]ity's lack of maintenance of [its] sewage [system and] manhole for a lengthy period of time," and asking for written documentation on "how the [C]ity proposes and plans to handle this problem and fix it[.]"

Two days later, on April 21, 2017, the Appellants sued the City, alleging that the City had failed to properly construct and maintain its sewage pipelines that traversed the Property, as well as the manhole leading to the pipelines, and that, as a result, untreated sewage repeatedly flooded the Property, causing property damage and creating a health hazard. According to the complaint, the sewage overflows constituted a continuing nuisance and trespass.[5] As relief, the Appellants sought

---

[4] According to the April 19 letter, the Appellants had also sent a letter to the City on March 23, 2017, but that letter is not in the appellate record.

[5] See *City of Columbus v. Barngrover*, 250 Ga. App. 589, 592 (1) (a) (552 SE2d 536) (2001) ("It is . . . well established that[,] where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable.") (citations, punctuation and emphasis omitted).

4

monetary damages, an injunction requiring the City to permanently and completely abate the continuing nuisance, attorney fees, and litigation costs.

The City moved to dismiss the complaint, arguing that the Appellants had failed to sufficiently comply with the applicable ante litem notice requirements by failing, inter alia, to put the City on notice of the claims of each named plaintiff. Following a hearing, the trial court ruled that the Appellants' ante litem notices sufficiently apprised the City of the claims of each individual plaintiff,[6] so dismissal of the entire complaint was not required on that basis. The court also apparently refused to dismiss the Appellants' equitable claim for a permanent injunction.[7] As for the Appellants' claim for monetary damages, however, the trial court ruled that the claim must be dismissed because the Appellants' ante litem notice had not complied

---

[6] Although the trial court's order initially states that the "Complaints" provided sufficient notice of claims asserted by each of the plaintiffs, when read in context with the rest of the paragraph in which this statement is made, the order is clearly referring to the "ante-litem notice[s]" filed by the Appellants, rather than the complaints.

[7] Because the City has not filed a cross-appeal to challenge the ruling, the propriety of that ruling is not before this Court. See OCGA § 5-6-38 (a); *Chester v. Ga. Mut. Ins. Co.*, 165 Ga. App. 783, 784 (1) (302 SE2d 594) (1983) (Because the appellee failed to file a cross-appeal, "the correctness of the trial court's grant of summary judgment to appellants is not before this [C]ourt and will not be considered.").

with OCGA § 36-33-5 (e), which required the Appellants to include in their ante litem notice the specific amount of monetary damages they were seeking from the City.[8] This appeal followed.[9]

> We review the grant of any motion to dismiss de novo, and a motion to dismiss should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. We construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor.[10]

With these guiding principles in mind, we turn now to the Appellants' specific claims of error.

1. The Appellants contend that the trial court erred in dismissing their claim for monetary damages arising from the continuing nuisance created by the City, arguing

---

[8] Similar to the situation addressed in Footnote 6, supra, the trial court's ruling on the Appellants' claim for monetary damages initially states that the Appellants' "Complaints" did not comply with OCGA § 36-33-5 (e). However, when the statement is read in context with the rest of the paragraph (especially the statute and case law cited by the court), it is clear that the order is referring to the ante litem notices filed by the Appellants, rather than the complaints.

[9] The court certified its order for immediate review, and this Court granted the Appellants' application for interlocutory review.

[10] *Harrell*, 346 Ga. App. at 636 (citations and punctuation omitted).

that their failure to identify a specific amount of damages in their ante litem notices did not bar their claim. According to the Appellants, the applicable ante litem notice statute, OCGA § 36-33-5, only applies to claims for monetary damages arising from negligence, and, thus, does not apply to a claim for damages arising from a continuing nuisance, such as their claim in this case.

Under the ante litem notice statute, OCGA § 36-33-5, anyone who intends to assert a claim against a municipal corporation for money damages arising from personal injuries or property damage must first provide notice of the claim.[11] Subsection (b) of the statute requires that, within six months of the event on which the claim is based, the claimant must provide written notice of the claim to the governing authority of the municipal corporation, and such notice must include "the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury."[12] Further, subsection (e) of the statute provides that, when describing the "extent of the injury" in the ante litem notice, as required in subsection (b), the notice must "include the specific amount of monetary damages being sought

[11] See OCGA § 36-33-5 (a).

[12] See OCGA § 36-33-5 (b).

7

from the municipal corporation."[13] According to the statute, "[t]he amount of monetary damages set forth in such claim shall constitute an offer of compromise. In the event such claim is not settled by the municipal corporation and the claimant litigates such claim, the amount of monetary damage set forth in such claim shall not be binding on the claimant."[14]

"The purpose of the ante litem notice requirement is to give the municipality the opportunity to investigate potential claims, ascertain the evidence, and avoid unnecessary litigation."[15] In other words, requiring a claimant to provide the municipality with specific information about his or her claim and alleged injuries, as well as a demand for the specific amount of monetary damages the claimant is seeking as compensation for such injuries, allows the municipality to make an

---

[13] OCGA § 36-33-5 (e). See OCGA § 36-33-5 (d) (referring to the requirement that the notice give a specific amount of monetary damages sought as a "demand for payment").

[14] OCGA § 36-33-5 (e). See also *Harrell*, 346 Ga. App. at 638 (1) (This language "directly implies that the defendant may accept such an offer, thereby creating a binding settlement.").

[15] *Davis v. City of Forsyth*, 275 Ga. App. 747, 748 (1) (621 SE2d 495) (2005) (punctuation and footnote omitted). See also *City of Chamblee v. Maxwell*, 264 Ga. 635, 637 (452 SE2d 488) (1994) (noting that the purpose of OCGA § 36-33-5 is to "afford city officials the opportunity to take proper steps to abate a continuing nuisance or trespass before the effects thereof become great or far-reaching[ ]").

8

informed decision about whether to accept the "offer of compromise," make a counter-offer, or otherwise resolve the claim in order to avoid litigation.[16] Moreover, subsection (e) of the statute does not require a potential plaintiff to provide the actual dollar amount of the damages allegedly incurred, which might be difficult to quantify in a case involving a continuing nuisance.[17] Instead, the provision requires the ante litem notice to provide "the specific amount of monetary damages being sought" from the city, i.e., a settlement offer.[18] And, if the city rejects the offer or a settlement cannot be reached, the plaintiff is not bound by that initial offer once litigation begins.[19]

---

[16] See *Harrell*, 346 Ga. App. at 638 (1); *Davis*, 275 Ga. App. at 748 (1); see also OCGA § 36-33-5 (c) ("Upon the presentation of such claim, the governing authority shall consider and act upon the claim within 30 days from the presentation; and the action of the governing authority, unless it results in the settlement thereof, shall in no sense be a bar to an action therefor in the courts.").

[17] See *City of Atlanta v. Landmark Environmental Indus.*, 272 Ga. App. 732, 742 (7) (613 SE2d 131) (2005) ("In cases of nuisances which cause permanent injury to land, the ordinary rule is that the measure of damages is the depreciation in the market value; in regard to nuisances which are of a non-permanent, abatable, or temporary nature, the depreciation in the usable or rental value ordinarily furnishes the measure. But, under some circumstances, there may also be a recovery for special damages.") (punctuation and footnote omitted).

[18] See OCGA § 36-33-5 (e).

[19] See id.

(a) In arguing that OCGA § 36-33-5 only applies to negligence cases, the Appellants rely on the Supreme Court of Georgia's decision in *West v. City of Albany*,[20] in which the Court held that "the statute's plain language demonstrates it applies only to damages caused by negligence, not intentional acts."[21] The Appellants argue, therefore, that their ante litem notices did not have to comply with the statute

[20] 300 Ga. 743 (797 SE2d 809) (2017).

[21] Id. at 747. In so ruling, the Supreme Court stated that it was "obvious" from the plain language of subsection (b), which refers to "the negligence which caused the injury[,]" that the statute "contemplates an injury sustained as a result of a negligent act or omission." Id. at 746.

Notably, *West* involved a claim brought under the Georgia Whistleblower Act, OCGA § 45-1-4, in which the plaintiff alleged that she had been retaliated against after she disclosed certain financial irregularities in the city's utility department. See *West*, 300 Ga. at 743. The Supreme Court held that, because the claim was based on retaliation, an intentional tort, OCGA § 36-33-5 did not apply. See id. at 746, 749. Further, in a footnote, the Supreme Court overruled four cases in which this Court had ruled that the statute applied to claims that arose from intentional acts by the municipality. See id. at 747, n. 8; see, e.g., *Brownlow v. Calhoun*, 198 Ga. App. 710 (402 SE2d 788) (1991) (The plaintiff sued the city after it twice denied the plaintiff's application for re-zoning. After considering the plaintiff's complaint and other evidence, this Court ruled that "the nature of appellant's cause of action is primarily grounded upon a theory of inverse condemnation[,]" to which OCGA § 36-33-5 applied.), overruled, *West*, 300 Ga. at 747, n. 8.

The Appellants also note that the Supreme Court's opinion in *West* "did not even mention subsection (e)" of OCGA § 36-33-5. Of course, the reason for that omission is clear: Because the claim only asserted an intentional tort, OCGA § 36-33-5 did not apply *at all*. Thus, any issue regarding the application of subsection (e) of that statute to the facts of the case would have been moot, and any discussion thereof would have been, at most, dicta.

10

because their complaint is based on a continuing nuisance, not negligence. This argument lacks merit.

Although a continuing nuisance may, in some cases, be caused by a defendant's intentional acts,[22] the Appellants' complaint in *this* case specifically alleges that the continuing nuisance at issue – the flooding of their Property by raw sewage from the City's sewage system – was caused by the City's negligence. For example, the complaint alleges that "[t]he City has failed to maintain [the sewage system's] manhole and the lines leading to and from it, to the extent that[,] on numerous occasions[,] raw, untreated sewage has bubbled up, leaked and flooded out of it into and around the backyard of the [Property.]" In addition, the complaint includes the following allegations:

> The City failed to "take any action(s) sufficient to properly maintain the
> manhole and keep this condition from re-occurring";

---

[22] See, e.g., *Wildcat Cliffs Builders, LLC v. Hagwood*, 292 Ga. App. 244 (663 SE2d 818) (2008) (While grading property in a subdivision, a developer removed several trees and installed retaining walls, apparently disregarding the line separating the work site from the plaintiff's adjacent property. As a result, some of the plaintiff's trees were removed, and the walls encroached on the plaintiff's property. The developer's actions created a continuing nuisance of severe water run-off and erosion onto the plaintiff's property. A jury found in favor of the plaintiff and awarded him both compensatory and punitive damages, based on evidence that the developer exhibited a conscious indifference to the consequences of his actions.).

"[t]his regularly repetitive nuisance condition, created by the action(s) or lack of proper maintenance and management action(s) by the City, has been allowed to continue"; and

"any action(s) taken by the [City] regarding solving this serious problem have not been sufficient or successful. Such failure(s) on the part of the [City] to properly and adequately maintain its active sewer manhole [on the Property] have directly caused or contributed to this continuing problem, and are a substantial factor in [the Appellants'] respective damages[.]"[23]

Thus, the Appellants' complaint clearly alleges that the continuing nuisance at issue, and the resulting damages, were caused by the City's negligence in maintaining its sewage system and, later, in unsuccessfully attempting to abate the nuisance. Consequently, there is no merit to the Appellants' argument that OCGA § 36-33-5 does not apply to this case because they did not assert a negligence claim.

(b) Moreover, numerous Georgia cases involving continuing nuisances very similar to the problem in the instant case support a finding that OCGA § 36-33-5

---

[23] Similarly, the Appellants' ante litem notices asserted that the City's violation of the federal Clean Water Act, 33 USC §§ 1251 et seq., constituted negligence per se; the nuisance arose from the "lack of maintenance of [the] City's sewage system manhole" on the Property; the City's attempts to abate the nuisance had been unsuccessful; and the City had failed "to take actions under its responsibility to protect the public[.]"

12

applies to the Appellants' claim. For example, in *Davis v. City of Forsyth*,[24] *City of Atlanta v. Landmark Environmental Indus.*,[25] and *Cundy v. City of Smyrna*,[26] this Court held that the statute applied to continuing nuisance claims based on sewage overflows onto the plaintiffs' properties.[27] And, in *City of Greensboro v. Rowland*,[28] this Court held that the statute applied to claims for continuing nuisance, trespass, and inverse condemnation arising from repeated instances of flooding allegedly caused by the city's poorly constructed and maintained water drainage system.[29] Thus, the

[24] 275 Ga. App. at 747.

[25] 272 Ga. App. at 743 (9).

[26] 264 Ga. App. 535 (591 SE2d 447) (2003).

[27] See also *City of Atlanta v. Broadnax*, 285 Ga. App. 430, 439 (5) (646 SE2d 279) (2007) (OCGA § 36-33-5 applied to a claim for a continuing nuisance based upon recurrent flooding of the plaintiff's property due to overflow from the city's sewer system.), overruled on other grounds, *Royal Capital Dev., LLC v. Maryland Cas. Co.*, 291 Ga. 262 (728 SE2d 234) (2012); *Barngrover*, 250 Ga. App. at 596 (4) (recognizing that OCGA § 36-33-5 applied to claims against a city for continuing nuisance, trespass, and inverse condemnation based upon damage to the plaintiff's property due to a repeated influx of water and sewage from the city's improperly maintained water and sewage drainage pipes).

[28] 334 Ga. App. 148 (778 SE2d 409) (2015).

[29] See also *City of Albany v. GA HY Imports*, 348 Ga. App. 885, 891-892 (1) (825 SE2d 385) (2019) (OCGA § 36-33-5 applied to claims for nuisance, trespass, and negligence arising from flooding that allegedly resulted from the city's failure to adequately drain storm water due to its inadequately designed and/or maintained

13

Appellants' argument that OCGA § 36-33-5 never applies to a nuisance claim is meritless.

(c) Given our conclusion that the Appellants' claim for monetary damages arose, at least in part, from the City's negligence and that OCGA § 36-33-5 applies in this case, it necessarily follows that the Appellants were required to comply with subsection (e). As shown above, subsection (e) states that the ante litem notice's "description of the extent of the injury[,]" which is required by subsection (b), "shall include the specific amount of monetary damages being sought from the municipal corporation." In this case, it is undisputed that none of the ante litem notices sent to the City by the Appellants included a claim for a specific amount of monetary damages. Consequently, the trial court did not err in concluding that the notices failed to comply with OCGA § 36-33-5 (e), and in dismissing the claim for monetary damages on that basis.[30]

(d) Still, the Appellants argue that their ante litem notices "substantially complied" with OCGA § 36-33-5 and, thus, were sufficient to survive a motion to

---

drainage system.).

[30] See *Harrell*, 346 Ga. App. at 638 (1).

dismiss. The Appellants rely on this Court's opinion in *Rowland*[31] for this argument.[32] Such reliance is misplaced.

In *Rowland*, after the city's water and sewage system continuously flooded the plaintiffs' property, the plaintiffs filed a claim for monetary damages arising from the continuing nuisance.[33] The city filed a motion to dismiss, arguing, inter alia, that the plaintiffs' ante litem notice letters did not substantially comply with OCGA § 36-33-5 (b), because the letters did not identify the "specific events" from which the plaintiffs' claim arose.[34] The trial court denied the motion, and this Court affirmed, holding that,

---

[31] See *Rowland*, 334 Ga. App. at 150-153 (2).

[32] The Appellants also point to the trial court's order in this case, which states that the ante litem notice requirements of OCGA § 36-33-5 applied to their claim for a continuing nuisance, but that, pursuant to *Rowland*, their ante litem notice letters were sufficient to comply with the statute *even though* the letters did not provide a specific amount of monetary damages allegedly arising from the continuing nuisance. For the reasons given in this Division, subsections (a) - (c), the trial court erred in so ruling. However, because the trial court was ultimately correct in granting the motion to dismiss the Appellants' claim for monetary damages, that dismissal ruling is affirmed pursuant to the "right for any reason" rule. See *Isbell v. Credit Nation Lending Svc.*, 319 Ga. App. 19, 25 (2) (b) (735 SE2d 46) (2012) (Even if the trial court's reason for reaching a decision is erroneous, this Court "may still affirm the trial court's judgment if it is right for any reason.").

[33] See *Rowland*, 334 Ga. App. at 148-149.

[34] See id. at 150-152 (2).

because the plaintiff's continuing nuisance was "predicated upon the happening of a continuous series of events," a new cause of action arose every day the property was flooded.[35] In such a case, the plaintiffs' ante litem notice letters were not required to identify the specific date of each injury, i.e., each time their property was flooded.[36] This Court held, therefore, that the plaintiffs' ante litem notice substantially complied with OCGA § 36-33-5 (b) and, thus, were sufficient to survive a motion to dismiss.[37]

In the instant case, the Appellants contend that the language of their ante litem notices is comparable to that in the notices sent by the plaintiffs in *Rowland*, and, therefore, their notices were sufficient to meet the requirements of OCGA § 36-33-5. However, a careful review of this Court's opinion in *Rowland* shows that the plaintiffs in that case sent their ante litem notices on September 16, 2013, and October 11, 2013.[38] At that time, subsection (e) of OCGA § 36-33-5 – the statutory

---

[35] See id. at 148, 152-153 (2) (citation and punctuation omitted).

[36] See id. at 152 (2). According to this Court, instead of the date of each incident of flooding, it was the *date of the ante litem notice* that was critical, because the plaintiffs were limited to recovering damages incurred within the six-month period preceding that date. See id. at 152-153 (2), citing to *Maxwell*, 264 Ga. at 636-637.

[37] See *Rowland*, 334 Ga. App. at 150-153 (2).

[38] See *Rowland*, 334 Ga. App. at 151-152 (2).

16

provision at issue in the instant case – *did not yet exist*. It was not until the 2014 session that the Georgia legislature amended OCGA § 36-33-5 to add subsection (e),[39] which took effect on July 1, 2014.[40] Thus, *unlike in the instant case*, there was no statute in existence at the time the plaintiffs in *Rowland* sent their ante litem notices that explicitly required them to include the specific amount of damages they were seeking to compensate them for the continuing nuisance created by the city.[41]

Consequently, *Rowland* does not support the Appellants' arguments that, under the *current* version of OCGA § 36-33-5, an ante litem notice that does not contain the "specific amount of monetary being sought from the municipal corporation[ ]" may still be deemed sufficient to "substantially comply" with OCGA § 36-33-5 (e).[42]

---

[39] See Ga. L. 2014, p. 125, § 1.

[40] See *Harrell*, 346 Ga. App. at 637.

[41] Compare id. at 637-638 (1) (OCGA § 36-33-5 (e) took effect two months after the injury at issue and two months before she gave ante litem notice to the city. Thus, because the plaintiff's ante litem notice failed to comply with that provision, the trial court did not err in dismissing her claim for monetary damages.).

[42] See *Harrell*, 346 Ga. App. at 638 (1) (An ante litem notice "does not substantially comply with subsection (e) [of OCGA § 36-33-5] unless a specific amount [of damages] is given that would constitute an offer that could be accepted by the municipality.").

2. The Appellants argue, in the alternative, that the trial court erred in dismissing their claim for monetary damages based on a finding that their *complaints* failed to comply with OCGA § 36-33-5 (e). As explained in Footnote 8, supra, however, when read in context with the entire paragraph, the court's reference to the Appellants' complaints, instead of their ante litem notices, was clearly a mistake. Regardless, given our decision in Division 1, supra, this claim of error is moot.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*